STATE OF NORTH CAROLINA v. FREDERICK BRACEY, JR.

No. 24

(Filed 5 May 1981)

1. Criminal Law § 92— motion to sever—question before court

The question before the court on a motion to sever is whether the offenses are so separate in time and place and so distinct in circumstances as to render consolidation unjust and prejudicial.

2. Criminal Law § 92.3— consolidation of robbery charges against defendant— transactional connection

Three charges against defendant for common law robbery were properly consolidated for trial on the ground that the offenses were based on a series of acts or transactions connected together or constituting parts of a single scheme or plan where all of the offenses occurred within ten days on the same street in Wilmington; all occurred in the late afternoon; in each case, two black males physically assaulted the attendant of a small business and took petty cash from the person of the victim or the cash box of the business; the assaults were of a similar nature, and each was without weapons, involved an element of surprise and involved choking, beating and kicking the victim; and in each case, the robbers escaped on foot. G.S. 15A-926(a).

State v. Bracey

**3. Jury § 6.3— improper hypothetical question to prospective jurors**

The trial court properly refused to permit defense counsel to ask each prospective juror whether such juror would change his opinion that defendant was not guilty simply because eleven other jurors held a different opinion that defendant was guilty since such question could not reasonably be expected to result in an answer bearing upon the qualification of the juror but was designed to commit the juror to a fixed position in regard to the evidence before he had heard it from the witnesses and before he had been instructed on the law by the court.

**4. Constitutional Law § 75— right against self-incrimination—impeachment of defendant—use of testimony given at suppression hearing**

Where defendant testified at a hearing on a motion to suppress his confession that he was under the influence of PCP or "bam" at the time he confessed, defendant's right against self-incrimination was not violated when the State was permitted to use his testimony from the suppression hearing to cross-examine him for impeachment purposes as to whether he used "bam."

**5. Criminal Law §§ 85.3, 86.5— cross-examination of defendant—illegal acts—impeaching good character evidence—motive**

Cross-examination of defendant in a robbery prosecution about his purchase and use of marijuana and drinking of beer after defendant testified he did not have a job between certain dates was relevant (1) to impeach the evidence of good character already in evidence, or (2) to establish a pecuniary motive for the robberies.

**6. Criminal Law § 102.3— improper jury argument—curative instructions**

In this prosecution of defendant for three robberies, defendant was not prejudiced by the prosecutor's jury argument of facts not in evidence concerning a photographic identification of defendant by two of the robbery victims where the trial judge took the first logical opportunity he had to give a curative instruction to the jury.

**7. Robbery § 3— competency of evidence in robbery prosecution**

In this prosecution of defendant for three robberies, a bloody pack of matches from the wallet of one robbery victim was properly admitted to illustrate the victim's previous testimony of how he was beaten and kicked until blood was drawn and he was rendered unconscious, a picture of a robbery victim taken at the hospital on the day he was robbed was properly admitted to illustrate his testimony concerning the robbery, and diagrams and testimony indicating the location of defendant's residence in relation to the robberies and the location of the robbed establishments in relation to each other were also properly admitted.

**8. Criminal Law § 76.1— refusal to suppress confession—motion for new suppression hearing because of newly discovered evidence**

In a robbery prosecution in which defendant testified at a hearing on a motion to suppress his confession that he was under the influence of drugs and was drowsy at the time he confessed, an officer testified defendant was alert when he confessed, and the trial judge found that defendant was not under the

influence of drugs when he made his confession, the trial court did not err in refusing to conduct a new suppression hearing because of newly discovered evidence when one of the robbery victims testified at trial that he saw defendant at the police station and he appeared sleepy, since such testimony only corroborated evidence already before the court and was not an "additional pertinent fact" within the meaning of G.S. 15A-975(c).

**9. Criminal Law § 134.4 — youthful offender — ambiguity in "no benefit" finding — new sentencing hearing**

A judgment stating that the eighteen-year-old defendant "would benefit as a Committed Youthful Offender but that Society would not" is ambiguous and requires a new sentencing hearing, since the language employed does not reveal whether defendant was found by the trial judge to be eligible or ineligible for the benefits of youthful offender status as required by G.S. 148-49.14.

ON the State's petition for discretionary review of decision of the Court of Appeals, 48 N.C. App. 603, 269 S.E. 2d 289 (1980), which found error in the trial before *Bruce, J.*, at the 30 July 1979 Session of NEW HANOVER Superior Court and ordered a new trial.

Defendant was charged with common law robbery in three separate indictments. The robberies allegedly occurred over a ten-day period from 17 April to 26 April 1979 in a two-block area of Market Street in Wilmington, North Carolina. In each robbery, two men would enter a small business in the afternoon and one of the men would assault the proprietor while the other took money from the cash drawer or the victim. The cases were consolidated for trial over objection of defendant. The evidence of each robbery may be summarized as follows:

In Case No. 79-CR-8013, Howard Edgerton was robbed while standing near the doorway of the Market Street Exxon at about 6:15 p.m. on 17 April 1979. A man came up behind Edgerton, put his arm around Edgerton's throat and began to choke him. The man told Edgerton not to fight him and to give him the money. Edgerton unlocked the cash register. Another man, whom Edgerton identified as defendant, took approximately $78 from the cash register while the first man stood over Edgerton. The two robbers ran around behind the station and left together. The defense's cross-examination of Edgerton questioned Edgerton's identification of defendant. Edgerton admitted he did not give the police much of a description of the two people who robbed him and had told the police it would be a waste of time for him to look at photographs. He admitted he had picked two people out of a

line-up, which did not include defendant, as the robbers and the first time he had seen defendant was the first day of the trial.

In Case No. 79-CR-8012, Thomas B. Hughes was robbed at approximately 4 p.m. on 25 April 1979 while working at his place of business, Pick and Plunder, located at 3020 Market Street, one-half block west of the Market Street Exxon. Hughes was sitting on the sidewalk working on a cash register. Two black males approached him and inquired whether he had an end table to which he replied he did not. Hughes entered his store with the black males following behind him. The two men went out the front door of the store. Then, the one Hughes identified as defendant charged him. Hughes grabbed defendant. The other black male jumped Hughes from behind and started to choke him. The three continued to struggle. The robbers eventually took approximately $95 from Hughes' wallet and left. The defense was not able to discredit Hughes' identification of defendant on cross-examination.

In Case No. 79-CR-8011, John B. Watkins was robbed at approximately 3 p.m. on 26 April 1979 while working at the Jay-Wash which is located almost directly across the street from the Market Street Exxon. Two black men came to his office that day. One of the men hit Watkins in the head and threw him against his desk. The other man, whom Watkins identified as defendant, began going through the desk drawer. Watkins had $22 taken from a cash box and $90 taken from his wallet. Both men hit and kicked him.

The State introduced, over objection, evidence that defendant confessed to committing all three offenses.

Defendant denied robbing Hughes, Edgerton or Watkins and denied confessing to the robberies.

The jury convicted defendant of the robbery of Thomas B. Hughes, Case No. 79-CR-8012, and acquitted him of the other two robberies. Judgment was imposed upon the verdict, and defendant appealed to the Court of Appeals.

Of the several assignments of error, the Court of Appeals, in an opinion by Webb J., with Martin (Robert M.) and Hill, JJ., concurring, addressed only two and held that (1) the trial court erred in consolidating the three charges thereby requiring a new trial

and (2) defendant's testimony on voir dire that he used PCP was not used illegally against him at trial before the jury.

We allowed the State's petition for discretionary review of the decision awarding a new trial for improper joinder. Defendant has brought forward all other assignments of error argued in the Court of Appeals.

*Rufus L. Edmisten, Attorney General, by Barry S. McNeill, Associate Attorney, for the State.*

*D. Webster Trask, attorney for defendant appellee.*

HUSKINS, Justice.

The first issue we must address is whether the Court of Appeals erred in holding the three separate charges were erroneously consolidated for trial. The Court of Appeals interpreted *State v. Greene,* 294 N.C. 418, 241 S.E. 2d 662 (1978), a case wherein a charge of assault with intent to commit rape was held to have been properly consolidated with charges of kidnapping and rape which occurred three hours later, to require this result. The Court of Appeals reasoned:

> The rationale of that case was that two separate charges may be consolidated if the scheme or plan is to accomplish one thing. We do not believe it applies in this case. We believe that implicit in the holding of *Greene* is the requirement that there be a transactional connection or a continuing program of action involving the crimes charged in order to consolidate them for trial. In the case sub judice there was no transactional connection or continuing program of action in regard to the three separate armed robberies. We hold that this scheme or plan to commit a series of several different robberies in the future is not a "series of acts of transactions" constituting a single scheme or plan within the meaning of the statute. It was error to consolidate the three separate charges for trial.

48 N.C. App. at 604-05, 269 S.E. 2d at 290. We hold this reasoning and interpretation of *Greene* is erroneous and accordingly reverse.

Consolidation of the offenses for trial is controlled by G.S. 15A-926(a) which provides:

> Two or more offenses may be joined in one pleading or for trial when the offenses, whether felonies or misdemeanors or both, are based on the same act or transaction or on a series of acts or transactions connected together or constituting parts of a single scheme or plan. . . .

This statute supplanted former G.S. 15-152 effective 1 July 1975. *See* 1973 N.C. Sess. Laws c. 1286 §§ 26, 31. The repealed statute allowed joinder of multiple offenses on the basis that they were of the same or similar character without any transactional connection. Official Commentary to G.S. 15A-926. The statute now permits joinder of offenses which are based (1) on the same act or transaction or (2) on a series of acts or transactions connected together or constituting parts of a single scheme or plan. There must be some sort of "transactional connection" between cases consolidated for trial. *State v. Powell*, 297 N.C. 419, 255 S.E. 2d 154 (1979). The court is required to grant a severance motion if it is necessary for "a fair determination of the defendant's guilt or innocence of each offense." G.S. 15A-927(b). The court must determine whether "in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense." G.S. 15A-927(b)(2).

[1] The question before the court on a motion to sever is whether the offenses are so separate in time and place and so distinct in circumstances as to render consolidation unjust and prejudicial. Whether offenses should be joined is a matter addressed to the sound discretion of the trial judge. His ruling will be overturned only upon a showing that he abused his discretion. *State v. Clark*, 301 N.C. 176, 270 S.E. 2d 425 (1980); *State v. Brown*, 300 N.C. 41, 265 S.E. 2d 191 (1980); *State v. Greene*, supra.

[2] In the present case, the trial judge denied defendant's motion to sever these three offenses and granted the State's motion to consolidate. There was a fourth case which the trial judge did sever from this trial. The trial judge ruled that "there are common issues of fact with respect to three of the cases." It is crucial to note the trial judge's ruling was based on commonality of facts and not just on a commonality of crimes. He did not permit joinder merely because the same criminal offense was involved. He ruled there was a transactional connection. We agree with his ruling.

The evidence in the three cases shows a similar modus operandi and similar circumstance in victims, location, time and motive. All the offenses occurred within ten days on the same street in Wilmington. All occurred in the late afternoon. In each case, two black males physically assaulted the attendant of a small business and took petty cash from the person of the victim or the cash box of the business. The assaults were of a similar nature. Each was without weapons, involved an element of surprise and involved choking, beating and kicking the victim. In each case, the robbers escaped on foot. The evidence was sufficient to justify joinder based on a series of acts or transactions connected together or constituting parts of a single scheme or plan. Joinder was proper under G.S. 15A-926.

Defendant has failed to show any prejudice or abuse of discretion by the trial judge in the joinder. No showing has been made that severance was necessary in this case to insure a fair determination by the jury on each offense. The evidence was not complicated. The jury instruction clearly separates the offenses. The jury's ability to differentiate the offenses is evidenced by its not guilty verdict in two of the three offenses. *See State v. Irick,* 291 N.C. 480, 231 S.E. 2d 833 (1977). The offenses were not so separate in time and place and so distinct in circumstance that consolidation was rendered unjust and prejudicial to defendant. *State v. Greene,* supra.

The Court of Appeals erred in holding this scheme or plan to commit a series of several different robberies to be without the necessary transactional connection. The facts establish a transactional connection. We hold the trial judge, acting within the framework of G.S. 15A-926(a) and in the exercise of his discretion, properly joined the cases for trial without prejudice to defendant.

[3] Defendant argues he was denied the opportunity to examine prospective jurors properly to determine whether he should exercise a peremptory challenge or whether challenge for cause existed. The trial judge sustained objection to the following question:

> If, after the State has put on all of its evidence and after you have heard all the evidence in the case and after the Judge has instructed you, you held an opinion that the defendant was not guilty, that the State had not met its burden

of proof in this case, would you change that opinion simply because eleven other jurors held a different opinion, that opinion being that the Defendant is guilty? Would any of you change your opinion simply for that reason?

Defendant contends the ruling denied him the right "to make direct oral inquiry of any prospective juror as to fitness and competency" as provided by G.S. 9-15(a) and required by due process guaranteed by the Fifth Amendment of the United States Constitution. We discern no error in the exclusion of this hypothetical question.

The voir dire examination of a juror serves the double purpose of (1) ascertaining whether challenge for cause exists and (2) enabling counsel to exercise intelligently the peremptory challenges allowed by law. The overall purpose is to secure an impartial jury. *State v. Boykin*, 291 N.C. 264, 229 S.E. 2d 914 (1976). "However, counsel's examination into the fitness of the jurors is subject to the trial judge's close supervision. The regulation of the manner and extent of the inquiry rests largely in the trial judge's discretion." *State v. Jackson*, 284 N.C. 321, 325, 200 S.E. 2d 626, 629 (1973); *see also State v. Bryant*, 282 N.C. 92, 191 S.E. 2d 745 (1972), *cert. den.* 410 U.S. 958, 35 L.Ed. 2d 691, 93 S.Ct. 1432, 410 U.S. 987, 36 L.Ed. 2d 184, 93 S.Ct. 1516 (1973).

The hypothetical question posed here could not reasonably be expected to result in an answer bearing upon the qualification of the juror. Instead, it is designed to commit the juror to a fixed position in regard to the evidence before he has heard it from the witnesses and before he has been instructed on the law by the court. The trial court should not permit counsel to question prospective jurors as to the kind of verdict they would render or how they would be inclined to vote on a given state of facts. *State v. Vinson*, 287 N.C. 326, 215 S.E. 2d 60 (1975), *death sentence vacated*, 428 U.S. 902, 49 L.Ed. 2d 1206, 96 S.Ct. 3204 (1976); 47 Am. Jur. 2d, Jury § 205; 50 C.J.S., Juries § 275 a.(2). In a majority of the jurisdictions which have addressed this problem, hypothetical questions of this nature have been considered improper. Annot. 99 A.L.R. 2d 7, § 7 (1965).

No abuse of discretion is shown, and this assignment of error is overruled. However, we are constrained to note with disapproval the trial judge's poor choice of words in disallowing this

voir dire question. His instruction to defense counsel to "quit asking crap over again" is hardly the best articulation of a ruling by a judge in a court of law.

[4]  The only other issue addressed by the Court of Appeals is set out in defendant's third argument. There, defendant contends it was error for the State to use information garnered from defendant's testimony during a suppression hearing to impeach his testimony at trial. At the suppression hearing, defendant testified he was under the influence of PCP or "bam" at the time he confessed to the crimes. At trial, the district attorney asked defendant whether he used "bam." Defendant answered over objection that he had used it once, the night before he was arrested. The Court of Appeals correctly rejected defendant's argument that *Simmons v. United States*, 390 U.S. 377, 19 L.Ed. 2d 1247, 88 S.Ct. 967 (1968), prohibited the use of this evidence by the State. *Simmons* holds "that when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection." 390 U.S. at 394, 19 L.Ed. 2d at 1259, 88 S.Ct. at 976. At issue in *Simmons* was the balance between the exercise of Fourth and Fifth Amendment rights. In the present case, there is no problem because defendant took the stand at trial thereby waiving his Fifth Amendment right against self-incrimination. His testimony from the unsuccessful suppression hearing was not introduced as evidence in the State's case in chief. Instead, defendant was questioned on cross-examination about his bad or illegal acts including the use of the illegal drug, PCP. This impeachment use, as opposed to using it to establish guilt, is permissible under the holding in *Simmons*. *Compare Harris v. New York*, 401 U.S. 222, 28 L.Ed. 2d 1, 91 S.Ct. 643 (1971).

[5]  Defendant's fourth argument concerns the other bad or illegal acts he was questioned about on cross-examination. As well as being questioned about "bam," defendant was asked about his purchase and use of marijuana and drinking of beer. The whole line of questions came after defendant testified he did not have a job between the middle of April 1979 and 26 April 1979. The evidence was relevant for two purposes: (1) to impeach the evidence of good character already in evidence, *State v. Nance*, 195 N.C. 47, 141 S.E. 468 (1928), or (2) to establish a pecuniary

motive for the robberies. *State v. Adams*, 245 N.C. 344, 95 S.E. 2d 902 (1957).

**[6]** Defendant's fifth argument concerns the failure of the trial judge to grant defendant's motion for mistrial based upon the district attorney's reference in his closing argument to certain facts not in evidence. The record reveals only the following:

ARGUMENT BY MR. TRASK:

ARGUMENT BY MISS PIPINES:

THE FOLLOWING TRANSPIRED DURING ARGUMENT BY MISS PIPINES:

MR. TRASK: Your Honor, I would like that particular statement put in that she has already made that is not on the record.

COURT: All right. Write down what you think she said and put it in the record after we get through with her argument. All right. You may continue.

MISS PIPINES CONTINUES ARGUMENT:

MISS PIPINES CONCLUDES ARGUMENT:

JURY EXCUSED FROM THE COURTROOM.

MR. TRASK: The Defendant objects to the statement which Miss Pipines made during her argument that Mr. Hughes and Mr. Edgerton picked the Defendant's photograph out of a group of photographs and that there was no question about that. The objection is based on the ground—

COURT: Just a minute; Miss Pipines you had better come over here and listen to this.

MISS PIPINES: I don't know. I don't care. So put it in there.

COURT: Let the record show that Miss Pipines agreed that that is what she said.

MISS PIPINES: Now—Well, all right.

COURT: You either—

MISS PIPINES: I don't know. I don't care. Let him put it in there the way he wants. I am not going to stipulate that is what I said.

COURT: You put in there what you will stipulate that you said then.

MISS PIPINES: I don't remember what I said.

COURT: Well, if you don't know, how in the hell do you expect anybody else to remember it. All right. That is what she said.

The record does not reveal any testimony before the jury about Hughes' identification of photographs. All testimony of this nature was on voir dire. Edgerton testified he did not look at any photographs. The prosecutorial indifference and the judicial intemperance manifested in this colloquy is neither condoned nor approved. However, no prejudice appears to have arisen to defendant. The trial judge took the first logical opportunity he had to give the following curative instruction to the jury:

Now, in this case the attorney for the State argued to you concerning someone looking, or two people looking through some photographs and picking out someone purportedly identified as the defendant. My recollection is that there was no such testimony before you. If so, then that argument would be improper. You may not consider things or contentions of the State that are based upon evidence that they wished had been put on or things they wished had happened. You may only consider their contentions about what evidence was in fact put on before you. If either of the attorneys in their arguments to you made arguments on evidence that was not in fact in evidence, then you are to ignore that argument.

Improper argument of counsel is cured when the trial judge promptly sustains any objection and cautions the jury not to consider it. *State v. Lee*, 293 N.C. 570, 238 S.E. 2d 299 (1977); *State v. Covington*, 290 N.C. 313, 226 S.E. 2d 629 (1976). Here, the objection was formally made, argued and apparently ruled upon at the close of the jury arguments. The corrective instruction was therefore made as soon as possible. The assignment of error is overruled.

Defendant's next argument addresses the denial of his motion for mistrial based on his third and fifth arguments. In view of our disposition of those arguments, this assignment of error is without merit. Defendant's mistrial motion was properly denied by the trial judge.

[7]   Defendant next presents several arguments relating to certain items of evidence offered by the State. All the arguments are without any legal basis. A bloody pack of matches from the wallet of Hughes was properly introduced to illustrate Hughes' previous testimony of how he was beaten and kicked until blood was drawn and he was rendered unconscious. *State v. Felton*, 283 N.C. 368, 196 S.E. 2d 239 (1973); *see generally* 1 Stansbury's N.C. Evidence § 118 (Brandis rev. 1973). A picture of Hughes taken at the hospital on the day he was robbed was also properly admitted to illustrate his testimony concerning the robbery. Hughes described "shoe tracks" upon his body and "all this blood." No prejudice is shown by defendant. In short, the photograph fairly and accurately illustrated his testimony. *State v. Mitchell*, 283 N.C. 462, 196 S.E. 2d 736 (1973); *see generally* 1 Stansbury, supra, § 34. Diagrams and testimony indicating the location of defendant's residence in relation to the robberies and the location of the robbed establishments in relation to each other were also properly admitted. *State v. Smith*, 221 N.C. 278, 20 S.E. 2d 313 (1942); *see generally* 1 Stansbury, supra, § 34.

[8]   Defendant contends in his tenth argument that the trial judge erred in refusing to conduct a new suppression hearing because of newly discovered evidence. Defendant had argued his confession was made while under the influence of drugs. At the suppression hearing, he testified he was drowsy while the officer testified he was alert when he made the confession. The trial judge found "the appearance of the defendant was one who was awake, coherent, was not sleepy; that his responses to questions of Officer Prescott were intelligent and responsive." He concluded defendant "knowingly, intelligently and understandingly waived his right to remain silent" and the confession by defendant was admissible.

At trial, one of the victims testified he saw defendant at the police station and he appeared sleepy. Defendant sought a new suppression hearing based on this newly discovered evidence

which the trial judge refused. A new suppression hearing is authorized if "the judge is satisfied . . . that additional pertinent facts have been discovered by defendant which he could not have discovered with reasonable diligence before the determination of the motion." G.S. 15A-975(c). This evidence, which only corroborates evidence already before the court, hardly meets this standard. This is not an "additional pertinent fact." At most, it is cumulative or corroborative evidence. The assignment of error is overruled.

Finally, defendant argues the court erred in failing to instruct the jury that State's witnesses as well as defendant may be interested in the result of the case and their testimony should be considered in that light. Defendant points to an instruction concerning his interest in the outcome of the case. He contends this singled out his testimony as lacking in credibility. Defendant ignores the immediately preceding paragraph in the charge which gives just such an instruction concerning the testimony of all witnesses. The argument is meritless. *See State v. Eakins*, 292 N.C. 445, 233 S.E. 2d 387 (1977).

[9] The conviction of defendant was without prejudicial error and must be upheld. However, in our review we have discovered error in the judgment which requires the sentence be vacated and the case remanded for a *de novo* sentencing hearing.

The judgment of the trial court in pertinent part reads as follows:

It is ADJUDGED that the defendant be imprisoned for the term of not less than Five (5) nor more than Ten (10) Years minimum, maximum, in the custody of North Carolina Department of Correction. The Court finds the defendant would benefit as a Committed Youthful Offender but that Society would not and it is the intent of the court that defendant should serve a minimum of 2 years before eligible for Parole.

Ambiguity in the "no benefit" finding requires a new sentencing hearing. The record shows defendant was eighteen years old at time of trial. The language employed does not reveal whether defendant was found by the trial judge to be eligible or ineligible for the benefits of youthful offender status as required by G.S.

148-49.14. The sentence appears to be imposed pursuant to G.S. 15A-1371(a). If that be so, the imposition of a minimum term of five years would make defendant eligible for parole upon service of one-fifth of the ten-year maximum term, *i.e.*, two years as expressed in the judgment. However, the language "defendant would benefit as a Committed Youthful Offender but that Society would not" is hardly a clear finding of "no benefit" to defendant form the youthful offender program. *See generally* G.S. 148-49.10 through .16. A criminal judgment is not the place for ambiguous judicial expressions of sarcasm or satire. The judgment must be vacated and the case remanded for resentencing. *State v. Rupard*, 299 N.C. 515, 263 S.E. 2d 554 (1980).

The decision of the Court of Appeals finding error in consolidation of the three indictments for trial is reversed. The judgment pronounced by the trial court is vacated, however, and the case remanded to the Court of Appeals for further remand to New Hanover Superior Court for a new sentencing hearing. At that hearing, if the court finds defendant would not benefit from sentencing as a committed youthful offender, then judgment shall be pronounced as provided by law in such cases. In the absence of such "no benefit" finding, judgment shall be pronounced as provided in G.S. 148-49.10 through .16, and defendant shall be sentenced as a committed youthful offender.

Reversed and remanded.