State v. Parks

_____

STATE OF NORTH CAROLINA v. JAMES GORDON PARKS

No. 8821SC634

(Filed 6 December 1988)

1. Jury § 6.3— prospective jurors—questions concerning feelings—erroneous disallowance

The trial court in a murder prosecution abused its discretion in refusing to permit defense counsel to ask prospective jurors during *voir dire* whether any of them "felt" defendant had to be guilty of some offense simply because he fired a gun which resulted in the death of another person, and to ask one prospective juror whether she "felt" that she would uphold her service as a juror equally well by returning a verdict of not guilty if she had a reasonable doubt as she would by returning a verdict of guilty if she were satisfied beyond a reasonable doubt. The questions did not stake out the jurors, call for speculation, or seek answers to legal questions, and the trial court's

disallowance of the questions prevented defendant from ascertaining whether a challenge for cause existed and from intelligently exercising his peremptory challenges.

**2. Criminal Law § 114.2— statement of evidence—no expression of opinion**

The trial court's statement while applying the law of involuntary manslaughter to the evidence that defendant fired a .22 rifle into the darkness was a fair summary of the evidence and did not constitute an expression of opinion on the evidence.

Judge COZORT concurs in part and dissents in part.

APPEAL by defendant from *Julius A. Rousseau, Judge.* Judgment entered 15 January 1988 in Superior Court, FORSYTH County. Heard in the Court of Appeals 3 November 1988.

*Attorney General Lacy H. Thornburg, by Debbie K. Wright, for the State.*

*Harrell Powell, Jr. and Garry Whitaker for the defendant-appellant.*

BECTON, Judge.

From the imposition of a 15-year prison sentence following his conviction of second degree murder, defendant appeals. For the reasons that follow, we grant a new trial.

I

After meeting Gloria Wherry in a lounge in Kernersville, the defendant, James Gordon Parks, agreed to take Ms. Wherry and her two children to Welcome, North Carolina. When defendant and Ms. Wherry arrived at her apartment, defendant was introduced to Robert Graham, who, although he was introduced as Ms. Wherry's brother, was actually her former husband and current boyfriend. After Ms. Wherry, Mr. Graham, and the two minor children got into defendant's automobile, a dispute arose as to where they were going. At some point, according to defendant, defendant drove to his own home and asked the passengers to leave. Defendant went inside his house, and then came out with a .22 rifle. As Ms. Wherry, Mr. Graham, and the children walked down the road in front of defendant's house, defendant fired the rifle. A shot hit Ms. Wherry in the head. She later died.

Mr. Graham testified that, although it was dark outside, defendant could be seen plainly because an outside light was on at the time. Defendant testified, however, that he could not see Ms. Wherry or Graham, and that he fired a warning shot into the ground at a 40 degree angle from where he heard voices.

## II

[1] In defendant's first two assignments of error, he contends the trial judge erred by not allowing certain questions to be asked of jurors during *voir dire*. Defendant's first assignment of error relates to the following colloquy.

> MR. POWELL: My question is: Is there anyone on the jury who *feels* that because the defendant had a gun in his hand, no matter what the circumstances might be, that if that—if he pulled the trigger to that gun and that person met their death as a result of that, that simply on those facts alone that he must be guilty of something?
>
> COURT: All right. Sustain to that.
>
> MR. POWELL: I'd like the record to show that even though the Court sustained the objection, that I believe Mr. Doomy raised his hand and said that would affect him.
>
> MR. BARRETT: Objection, Your Honor.
>
> COURT: Well, I sustained the question. I don't know what Mr. Barrett said or somebody else said.

Defendant's second assignment of error relates to the question contained in the following colloquy:

> MR. POWELL: Let me ask this question of all jurors. Well, let me stick with Ms. Hinton with one more question. Ms. Hinton, as a juror, *do you feel* that you would have upheld your service as a juror equally as well by returning a verdict of not guilty if you had a reasonable doubt as you would of returning a verdict of guilty if you were satisfied beyond a reasonable doubt?
>
> MR. BARRETT: Objection.
>
> COURT: Sustained.

MR. POWELL: Ms. Hinton, do you have any question [sic]? You said that from what you'd seen and what you'd heard you'd tend to favor the enforcement of the law. . . .

The judge sustained the State's objections to these questions. Defendant contends that the judge, by so doing, prevented him from ascertaining whether a challenge for cause existed, prevented him from exercising his peremptory challenges intelligently, prevented him from selecting an impartial jury, and was an abuse of discretion. We agree.

The purpose of *voir dire* is to secure an impartial jury. *State v. Bracey*, 303 N.C. 112, 227 S.E. 2d 390 (1981). Although the trial judge has broad discretion in regulating jury *voir dire*, *State v. Avery*, 315 N.C. 1, 337 S.E. 2d 786 (1985), we hold, in the case *sub judice*, that harmful error occurred. The trial judge, in sustaining objections to the proffered questions, operated under a misapprehension of the law. We specifically reject the State's argument: (1) that defense counsel impermissibly sought to "stake out" jurors as to what their decision would be under a given set of facts, *State v. Williams*, 41 N.C. App. 287, 291, 254 S.E. 2d 649, 653 (1974), *disc. rev. denied*, 297 N.C. 699, 259 S.E. 2d 297 (1979); (2) that the proffered questions had no bearing on the juror's ability to sit and hear the evidence since "the jurors could only speculate"; and (3) that defense counsel impermissibly sought answers to legal questions before the trial judge had instructed the jurors on the applicable legal principles.

*Voir dire* is a time for lawyers to evaluate jurors. It is not necessarily the time for jurors to evaluate themselves. One way lawyers evaluate jurors is to delve into their attitudes. This can best be accomplished by inquiries into beliefs, feelings, and actions. "How" and "why" questions elicit information so that lawyers are in a position to evaluate jurors. Asking jurors "Do you feel" questions is qualitatively different from asking jurors "What would you do" questions. Questions dealing with feelings neither stake out, call for speculations, nor require answers to legal questions.

Significantly, the critical inquiry of the first question proffered by defense counsel was whether any of the jurors *felt* defendant had to be guilty of some offense simply because he fired a

State v. Parks

gun which resulted in the death of another person. This question seems indistinguishable from questions generally allowed on *voir dire* — e.g., "Do you think the defendant must be guilty simply because .he is charged with a crime?" or, "Do you feel that a driver is at fault simply because his car strikes a pedestrian?" In our view, the excluded question could have elicited responses from jurors which would tend to show which jurors would be more or less inclined to fairly consider defenses such as accident. Indeed, as the quoted colloquy suggests, one juror may have felt that a person who fires a gun which results in the death of another person has to be guilty of something. In our view, the disallowance of the proper *voir dire* question prevented counsel from inquiring further into the attitudes of jurors and from exercising intelligently peremptory challenges allowed by law.

The critical import of the second question proffered by defense counsel was whether the juror's attitude about conviction or acquittal would adversely affect her in the deliberation process. Had Ms. Hinton answered, "No, I do not feel I would have upheld my service as a juror equally as well by returning a verdict of not guilty if I had a reasonable doubt, as I would of returning a verdict of guilty if I were satisfied beyond a reasonable doubt," defense counsel could have inquired whether a greater quantum of truth was necessary for her to acquit than to convict or whether she thought the defendant had some burden of proving his innocence. After all, as the colloquy above suggests, Ms. Hinton had already indicated to defense counsel that she would "tend to favor the enforcement of law."

Finally, with regard to jury selection issues, we do not deem it fatal to defendant's argument that the record does not reflect whether defendant successfully challenged jurors for cause or whether defendant exercised all of his peremptory challenges. By disallowing the excepted-to *voir dire* questions, the trial judge prevented defendant from ascertaining whether a challenge for cause existed and further prevented defendant from intelligently exercising his peremptory challenges.

### III

[2] In his final assignment of error, defendant contends the trial court's factual summary during instruction to the jury, that defendant fired into the darkness, constitutes reversible error. De-

fendant argues the trial court violated N.C. Gen. Stat. Sec. 15A-1232 by giving unequal stress to the State's contentions in summarizing the evidence.

In instructing the jury, the trial judge must not express an opinion as to whether a fact has been proven. N.C. Gen. Stat. 15A-1232. The trial judge need only summarize the evidence to the extent necessary to explain the application of the law to the evidence. *Id.* In this case, the trial judge was explaining the law of involuntary manslaughter and applying the evidence to that law when he stated, "that it was dark . . .; and that the defendant fired a .22 rifle into the darkness . . . ." We have reviewed the record and find that this is a fair summary of the evidence. Defendant himself contended it was too dark for him to see when he fired his gun. The State actually presented evidence that there was enough light for defendant to see what he was doing. Even if the summary was not a fair assessment of the evidence, defendant has not shown how he was unduly prejudiced since this summary applied to the involuntary manslaughter instruction only. This assignment of error is without merit.

Based on errors committed during the jury *voir dire*, defendant is entitled to a

New trial.

Judge PHILLIPS concurs.

Judge COZORT concurs in part and dissents in part.

Judge COZORT dissenting in part.

I concur with the majority's holding that the trial court's instructions to the jury did not constitute error. As to the majority's holding that the defendant is entitled to a new trial because the trial court sustained the State's objections to two of defendant's proposed questions during jury selection, I dissent.

As I read the transcript, it was apparent that the two questions under review were designed to enable defense counsel to evaluate whether the jurors completely understood the law and their obligations in terms of: (1) the State's burden of proof as to the specific offense charged, and (2) the element of reasonable

doubt. My reading of the transcript convinces me that these areas were sufficiently explored by other questions asked of the potential jurors. For that reason, I do not believe the trial court erred in sustaining objections to the two specific questions at issue on this appeal. I believe the defendant's trial was free of prejudicial error.