HUNTER, Judge.
A jury found Clinton Bernard Revel ("defendant") guilty of possession of a handgun by a convicted felon but not guilty of robbery with a dangerous weapon. Upon defendant's guilty plea to habitual felon status, the trial court sentenced him to an active prison term of 114 to 146 months. Defendant gave timely notice of appeal in open court.
The prosecution's evidence tended to show that on the afternoon of 6 March 2003, Hansel Allison ("Allison") drove his burgundy Toyota Camry to Bethabara Point Apartments to pick up defendant. The two men then proceeded to Viking Drive to meet their mutual friend, Isaac Barr ("Barr"). After picking up Barr,Allison allowed defendant to drive the car. The three men "just r[ode] around" Winston-Salem, ending up on the south side of town. After stopping briefly at Salem Garden, defendant proceeded to the Boston Grocery convenience store at the intersection of Fourteenth Street and Cherry Street. Defendant parked and exited the car, and was joined outside by Allison and Barr. Allison saw defendant point a gun at a man in front of the store, and saw the man "throwing stuff out of his pockets." The three men then ran back to the car. The group left Boston Grocery with defendant driving Allison's car, Allison seated in the back seat, and Barr sitting in the front passenger's seat beside defendant. As he was driving, defendant handed the gun to Allison, who looked at it briefly before handing it back to defendant. Allison did not own a gun, had never seen a gun in the car before, and had not seen defendant with the gun prior to the incident at Boston Grocery. Defendant drove to a gas station, backed the car into the parking lot and parked. Allison, who pled guilty to common law robbery based on the incident, was sitting in the back seat on the passenger's side when the police arrived.
At approximately 8:00 p.m. on 6 March 2003, Verlie John Fields ("Fields") went to the Boston Grocery convenience store at the corner of 14th Street and Cherry Street in Winston-Salem, North Carolina. When he walked outside to talk to his girlfriend on his cellular phone, he noticed a burgundy car pull into the store's parking lot. Defendant exited the vehicle from the driver's door and was joined by two associates who exited the car from thepassenger's side. As defendant walked around the front of the car, Fields saw him pull a handgun from beneath his shirt. As Fields tried to "duck and run at the same time," defendant pointed the gun at him, told him not to run and to "throw all your stuff on the ground[.]" After telling his girlfriend that he was being robbed, Fields dropped the phone and emptied his pockets onto the ground. After asking Fields if the $2.00 on the ground was all that Fields was carrying, defendant lifted the stocking cap that had been covering his face and bent down to pick up the money. At this point, Fields was able to see defendant's face. Defendant asked Fields if he had any drugs. When Fields indicated he had no drugs, defendant walked back to the car while keeping the gun aimed at Fields. Joined by his two associates, defendant got back into the driver's seat and drove away from the store. Fields ran into the store, reported the robbery, and pointed out the burgundy car to the store's manager, Claude Goodwin, Jr., who followed the suspects in his own car while communicating with police by cellular phone. Winston-Salem Police Officer T.L. McMasters ("McMasters") was on patrol in District Three on 6 March 2003, when he was advised to be on the lookout for a "possible suspect vehicle in an armed robbery." He turned left from Cotton Street onto Broad Street and drove northward until he "noticed a vehicle matching the description backed in [at] the In and Out." McMasters pulled into the In and Out parking lot and stopped his car, at which point he observed three black males in the suspect vehicle "sitting slouched down in [the] seats." He approached the vehicle and askeddefendant, who was in the driver's seat, to step outside and speak with him. Defendant identified himself and told McMasters that no weapons were in the vehicle. As McMasters was speaking with defendant, Officers John Coppley ("Coppley") and J. P. Timberlake ("Timberlake") arrived at the scene. Timberlake, who was "considerably taller" than the other officers, peered through the car's windshield and spotted the butt of an unloaded Taurus .357 magnum revolver lying under the driver's seat, "right up under the lip of the front seat on the floor" in front of the seat adjustments. Police examined the gun for latent fingerprints and found none.
Winston Salem Police Officer Matthew Mulgrew ("Mulgrew") responded to Boston Grocery and spoke with Fields, who gave an account of the robbery consistent with his trial testimony. While he was with Fields, Mulgrew received a report that officers had located possible suspects at a gas station at the corner of First and Broad Streets. Mulgrew drove Fields to the In and Out gas station at the corner of First and Broad, where they found "several police cars out with a burgundy vehicle . . . with several subjects standing out in the parking lot." Fields "positively identified [defendant] as the one that pointed the gun at him and stole his money." Fields also identified defendant in court as the man who robbed him at gunpoint at the Boston Grocery.
Defendant gave a statement to police denying involvement in the robbery or possession of the handgun, claiming that the gunfound in the car belonged to Allison. Defendant further stated, "I can't take a gun charge because I'm looking at Fed[eral] time."
Defendant argues on appeal that the trial court erred in denying his motion to dismiss the charge of possession of a hangun by a felon, absent substantial evidence that he was in constructive possession of the handgun found in Allison's car. In reviewing the denial of a criminal defendant's motion to dismiss, we must determine whether the evidence at trial, viewed in the light most favorable to the State, was sufficient to allow a reasonable juror to find defendant guilty of the essential elements of the crime beyond a reasonable doubt. See State v. Earnhardt, 307 N.C. 62, 296 S.E.2d 649 (1982).
Under N.C. Gen. Stat. § 14-415.1(a) (2003) it is unlawful for "any person who has been convicted of a felony to purchase, own, possess, or have in his custody, care, or control any handgun or other firearm with a barrel length of less than 18 inches or an overall length of less than 26 inches[.]" State v. Bowens, 140 N.C. App. 217, 222, 535 S.E.2d 870, 873 (2000). Possession of an object may be actual or constructive. A defendant has actual possession of an object on his person if he is aware of its presence and has the power and intent to control its disposition or use. See State v. Crawford, 104 N.C. App. 591, 600, 410 S.E.2d 499, 504 (1991). In the case before us, the State adduced the testimony of two eyewitnesses who saw defendant in actual possession of a handgun both during the robbery of Fields at the Boston Grocery and in Allison's car immediately thereafter. Therecovery of the handgun beneath defendant's car seat corroborated the witnesses' claims. Moreover, defendant stipulated at trial to his prior felony conviction. Accordingly, the trial court properly denied defendant's motion to dismiss the charge under N.C. Gen. Stat. § 14-415.1. See State v. Glasco, 160 N.C. App. 150, 156-57, 585 S.E.2d 257, 262, disc. review denied, 357 N.C. 580, 589 S.E.2d 356 (2003).
Defendant next claims that the trial court erred in denying his pre-trial motion to sever his two charges for trial pursuant to N.C. Gen. Stat. § 15A-927 (2003). In requesting a severance, defendant argued to the trial court that he would be prejudiced in his trial for robbery with a dangerous weapon if the jury learned of his prior felony conviction, an essential element of the charge of possession of a handgun as a convicted felon. Inasmuch as the jury acquitted defendant of the robbery charge, we find his concerns of prejudice unfounded. State v. Bracey, 303 N.C. 112, 118, 277 S.E.2d 390, 394 (1981) (citing State v. Irick, 291 N.C. 480, 231 S.E.2d 833 (1977)). We further note that defendant failed to renew his motion for severance at trial. This Court has held that a defendant's "failure to renew a motion to sever as required by G.S. 15A-927(a)(2) waives any right to severance and that on appeal the Court is limited to reviewing whether the trial court abused its discretion in ordering joinder at the time of the trial court's decision to join." State v. McDonald, 163 N.C. App. 458, 463-64, 593 S.E.2d 793, 797 (citing State v. Agubata, 92 N.C. App.651, 660-61, 375 S.E.2d 702, 708 (1989)), disc. review denied, 358 N.C. 548, 599 S.E.2d 910 (2004).
The joinder of criminal charges for trial requires only that there be "some sort of 'transactional connection' between" them. State v. Bracey, 303 N.C. at 117, 277 S.E.2d at 394 (quoting State v. Powell, 297 N.C. 419, 255 S.E.2d 154 (1979)). Here, defendant's use of the handgun during the alleged robbery was sufficient to establish the requisite connection between the two cases. Accordingly, the trial court did not abuse its discretion in electing to consolidate the charges.
The record on appeal contains additional assignments of error not addressed by defendant in his brief to this Court. Pursuant to N.C.R. App. P. 28(b)(6), we deem them abandoned.
No error.
Judges ELMORE and STEELMAN concur.
Report per Rule 30(e).