STATE OF NORTH CAROLINA v. JOHN ROBERT ELLIOTT

No. 224A94

(Filed 6 September 1996)

**1. Jury § 123 (NCI4th)— capital murder—jury selection— whether a juror would stand up to other jurors—attempt to stake out jurors**

The trial court did not abuse its discretion during jury selection for a capital first-degree murder prosecution by excluding a question which seemed designed to determine how well prospective jurors would stand up to other jurors in the event of a split decision, which amounts to an impermissible "stake out."

**Am Jur 2d, Jury §§ 189, 206, 208, 209.**

**Effect of accused's federal constitutional rights on scope of voir dire examination of prospective jurors— Supreme Court cases. 114 L. Ed. 2d 763.**

**2. Jury § 124 (NCI4th)— capital murder—jury selection— question as to whether juror would make up his own mind—improper**

The trial court did not abuse its discretion during jury selection for a capital first-degree murder prosecution by excluding the question "Will each of you make up your own mind about each and every aspect of this case?" In the context of this portion of defendant's *voir dire*, the excluded question may have had the tendency to suggest that jurors should make decisions without considering the opinions of other jurors. Furthermore, there was no prejudice in that the trial court permitted defendant to explore this panel's understanding of their right to reach their own opinions and each indicated an understanding that each juror has one vote, that no one juror's vote was stronger than any other, and

STATE v. ELLIOTT

[344 N.C. 242 (1996)]

that each had a right to remain steadfast to his or her own resolve.

**Am Jur 2d, Jury §§ 189, 206, 208, 209.**

**Effect of accused's federal constitutional rights on scope of voir dire examination of prospective jurors— Supreme Court cases. 114 L. Ed. 2d 763.**

3. **Jury § 123 (NCI4th)— capital murder—jury selection— right of juror to stand by beliefs—attempt to stake out jurors**

The trial court did not abuse its discretion during jury selection for a capital first-degree murder prosecution by excluding a question to a prospective juror where defendant asked whether the juror understood that while the law requires deliberation with other jurors, he has the right to stand by his beliefs, the juror replied affirmatively, and the court sustained the State's objection to whether the juror would stand by his beliefs. This question amounted to an impermissible attempt to "stake out" the prospective juror.

**Am Jur 2d, Jury §§ 189, 206, 208, 209.**

**Effect of accused's federal constitutional rights on scope of voir dire examination .of prospective jurors— Supreme Court cases. 114 L. Ed. 2d 763.**

4. **Jury § 123 (NCI4th)— capital murder—jury selection— presumption of innocence—attempt to stake out jurors**

The trial court did not abuse its discretion during jury selection for a first-degree murder prosecution by preventing defense counsel from asking prospective jurors whether they would "hold to" the presumption of innocence. The question may have suggested that jurors should do so without considering the evidence offered by the State to overcome the presumption; if so, the question amounted to an impermissible attempt to "stake out" the jurors.

**Am Jur 2d, Jury §§ 189, 206, 208, 209.**

**Effect of accused's federal constitutional rights on scope of voir dire examination of prospective jurors— Supreme Court cases. 114 L. Ed. 2d 763.**

STATE v. ELLIOTT

[344 N.C. 242 (1996)]

**5. Jury § 124 (NCI4th)— capital murder—jury selection— defendant's attempt to define malice**

The trial court did not abuse its discretion during jury selection for a capital first-degree murder prosecution by not allowing defendant to explain malice to prospective jurors where defendant's attempt to define malice did not provide the jury with a complete statement of the law. It is well within the discretion of the court to prohibit counsel from instructing prospective jurors on the law during *voir dire.*

**Am Jur 2d, Jury §§ 189, 205, 206.**

**Effect of accused's federal constitutional rights on scope of voir dire examination of prospective jurors— Supreme Court cases. 114 L. Ed. 2d 763.**

**6. Jury § 141 (NCI4th)— capital murder—jury selection— questions as to parole eligibility**

The trial court did not abuse its discretion during jury selection for a capital first-degree murder prosecution by denying defendant's pretrial motion to permit *voir dire* of prospective jurors on their perceptions of parole eligibility.

**Am Jur 2d, Jury §§ 189, 205-208.**

**7. Criminal Law § 860 (NCI4th)— capital murder—jury selection—parole eligibility—motion to instruct denied**

The trial court did not err in a first-degree murder prosecution by denying defendant's pretrial motion to instruct the jury on parole eligibility.

**Am Jur 2d, Jury §§ 189, 205-208.**

**8. Jury § 148 (NCI4th)— capital murder—jury selection— whether juror could vote for sentence other than death**

The trial court did not err during jury selection for a first-degree murder by disallowing questions asking a prospective juror whether he could think of any situation where he could vote to impose a sentence other than death for first-degree murder. The questions were an impermissible attempt to determine what kind of verdict he would render under certain circumstances.

**Am Jur 2d, Jury §§ 189, 205-208.**

STATE v. ELLIOTT

[344 N.C. 242 (1996)]

Effect of accused's federal constitutional rights on scope of voir dire examination of prospective jurors— Supreme Court cases. 114 L. Ed. 2d 763.

9. **Jury § 148 (NCI4th)— capital murder—jury selection— voir dire of prospective juror restricted—peremptory exercised—no prejudice**

Defendant could not show prejudicial error during jury selection for a capital first-degree murder prosecution where defendant was permitted to ask a prospective juror whether she would automatically impose the death penalty, she answered by stating that she would follow the instructions given by the trial court, she stated that the fact that child abuse was involved would not change her answer, the court restricted further *voir dire,* defendant exercised a peremptory challenge, and defendant did not exhaust his peremptory challenges.

Am Jur 2d, Jury §§ 189, 205, 234, 235.

Comment Note.—Beliefs regarding capital punishment as disqualifying juror in capital case—post-*Witherspoon* cases. 39 ALR3d 550.

10. **Homicide § 253 (NCI4th)— capital murder—child abuse— premeditation and deliberation—sufficiency of evidence**

There was sufficient evidence to support a verdict of guilty of first-degree murder based on premeditation and deliberation in a prosecution arising from the death of a two year old child named Brandie where the evidence showed that defendant, the boyfriend of Brandie's mother, became angry when Brandie soiled her pants; after cleaning and changing her he told her to assume a punishment position and went to the kitchen for a glass of water; Brandie was in the position with her head raised rather than down when defendant returned; and defendant grabbed Brandie by her hair and slammed her head to the floor six or seven times. The evidence that defendant became angry and went into the kitchen to get a glass of water after instructing Brandie to assume the punishment position and before grabbing her head and repeatedly slamming it to the floor permitted the jury to conclude that defendant formed the intent to kill and carried out that intent in a cool state of blood and not as a result of a violent passion attributable to sufficient provocation.

Am Jur 2d, Homicide §§ 228, 260.

STATE v. ELLIOTT

[344 N.C. 242 (1996)]

**Modern status of the rules requiring malice "afore-thought," "deliberation," or "premeditation," as elements of murder in the first degree. 18 ALR4th 961.**

**11. Homicide § 446 (NCI4th)— capital murder—instructions—malice—use of hands or feet**

There was no plain error in a prosecution for capital first-degree murder and felony child abuse in the court's instruction on malice where defendant contended that the instruction unconstitutionally reduced the State's burden of proof. Although malice is not implied when death ensues from an attack made with the hands or feet on a strong or mature person, death not ordinarily being caused by such an attack, this reasoning is inapplicable when a strong or mature person makes an attack by hands or feet alone upon a two-year-old child. The instruction here informed the jury that it could infer malice from an attack by hand alone when the attack was made by a strong or mature person upon a weaker or defenseless person, but did not require the jury to infer malice from the evidence.

**Am Jur 2d, Homicide §§ 227, 265, 482, 483, 500, 509.**

**Inference of malice or intent to kill where killing is by blow without weapon. 22 ALR2d 854.**

**Criminal liability of parent, teacher, or one in loco parentis for homicide by excessive or improper punishment inflicted on child. 89 ALR2d 417.**

**12. Homicide § 493 (NCI4th)— capital murder and felony child abuse—instructions—premeditation and deliberation—lack of provocation**

There was no plain error in a prosecution for capital first-degree murder and felony child abuse in the court's instruction on premeditation and deliberation where defendant contended that the jury could have understood the instruction to express the trial court's opinion that the State had proven lack of provocation, but the instruction informed the jury that lack of provocation by the deceased is a circumstance which permits premeditation and deliberation to be inferred and did not suggest, and could not reasonably be understood to imply, the opinion that the State had proven lack of provocation.

**Am Jur 2d, Homicide §§ 45, 52, 501, 508.**

STATE v. ELLIOTT

[344 N.C. 242 (1996)]

Instructions as to presumption of deliberation and premeditation. 96 ALR2d 1435.

Modern status of the rules requiring malice "aforethought," "deliberation," or "premeditation," as elements of murder in the first degree. 18 ALR4th 961.

13. **Homicide § 482.1 (NCI4th)— capital murder and felony child abuse—instructions—premeditation and deliberation—lack of provocation by victim**

There was no plain error in the trial court's instruction on premeditation and deliberation in a prosecution for capital first-degree murder and felony child abuse where defendant argued that the instruction, which was based upon the pattern jury instruction, improperly narrowed the scope of provocation by the deceased. The instruction required the State to prove lack of provocation by the deceased, did not permit the jury to infer premeditation and deliberation from lack of evidence of provocation, and was consistent with the Supreme Court's repeated statement that lack of provocation by the deceased is a circumstance that may be considered in determining whether a killing was done with premeditation and deliberation.

Am Jur 2d, Homicide §§ 45, 52, 483, 484.

Instructions as to presumption of deliberation and premeditation. 96 ALR2d 1435.

Construction of statutes or rules making mandatory the use of pattern or uniform approved jury instructions. 49 ALR3d 128.

Modern status of the rules requiring malice "aforethought," "deliberation," or "premeditation," as elements of murder in the first degree. 18 ALR4th 961.

14. **Homicide § 483 (NCI4th)—first-degree murder—instructions on premeditation and deliberation—killing of child**

There was no plain error in a prosecution for capital first-degree murder and felony child abuse in the trial court's instruction on premeditation and deliberation where defendant argued that the instruction improperly rendered any nonaccidental killing of a child a first-degree murder since a child is incapable of legal provocation, but the court did not instruct the jury that a child was incapable of provocation, and defendant argued

STATE v. ELLIOTT

[344 N.C. 242 (1996)]

that the instruction erroneously informed the jury that deliberation means that defendant acted in a cool state of mind, but the instruction given was consistent with the pattern jury instructions and the North Carolina Supreme Court's definition of deliberation.

**Am Jur 2d, Homicide §§ 45, 52, 483, 501.**

**Instructions as to presumption of deliberation and premeditation. 96 ALR2d 1435.**

**Construction of statutes or rules making mandatory the use of pattern or uniform approved jury instructions. 49 ALR3d 128.**

**Modern status of the rules requiring malice "afore-thought," "deliberation," or "premeditation," as elements of murder in the first degree. 18 ALR4th 961.**

15. **Evidence and Witnesses § 2266 (NCI4th)— capital murder and felony child abuse—expert testimony—battered child syndrome**

The trial court did not abuse its discretion in a prosecution for capital first-degree murder and felony child abuse by permitting the State to present to the jury testimony from an expert in pediatrics and child abuse with respect to battered child syndrome. The testimony was relevant to show that the child was killed by intentional means and to show premeditation and deliberation. N.C.G.S. § 8C-1, Rule 403.

**Am Jur 2d, Expert and Opinion Evidence §§ 37, 179, 218; Homicide §§ 397, 398.**

**Admissibility of expert medical testimony on battered child syndrome. 98 ALR3d 306.**

**Modern status of the rules requiring malice "afore-thought," "deliberation," or "premeditation," as elements of murder in the first degree. 18 ALR4th 961.**

16. **Homicide § 477 (NCI4th)— capital murder—absence of motive—instruction not given without request**

There was no plain error in a capital prosecution for first-degree murder where defendant did not request and the court did not give an instruction that absence of a motive is a circumstance which could be considered in determining defendant's guilt or

STATE v. ELLIOTT

[344 N.C. 242 (1996)]

innocence. The trial court is required to instruct on all substantial features of a case, but not on subordinate features in the absence of a special request. Motive is not an element of first-degree murder, nor is its absence a defense; the presence or absence of motive is merely a circumstance which may be considered in determining guilt or innocence.

**Am Jur 2d, Homicide §§ 42, 280, 502.**

**Necessity that trial court charge upon motive in homicide case. 71 ALR2d 1025.**

17. **Criminal Law § 443 (NCI4th)— capital murder and felony child abuse—prosecutor's argument—what the victim would have been thinking**

The trial court did not abuse its discretion by failing to intervene *ex mero motu* in a prosecution for capital first-degree murder and felony child abuse where defendant contended that the prosecutor asked the jurors to put themselves in the position of the victim, but the prosecutor's remarks described what the two-year-old victim may have been thinking as defendant beat her and did not ask the jurors to put themselves in her position. The argument was based upon the evidence presented at trial and reasonable inferences which could be drawn therefrom.

**Am Jur 2d, Trial §§ 544, 545, 566, 649.**

**Propriety and prejudicial effect of prosecutor's remarks as to victim's age, family circumstances, or the like. 50 ALR3d 8.**

18. **Criminal Law § 443 (NCI4th)— capital murder and felony child abuse—prosecutor's argument—advocate for victim**

The trial court did not err by failing to intervene *ex mero motu* in a prosecution for capital first-degree murder and felony child abuse where defendant contended that the prosecutor argued that he was a representative of the victim, but the prosecutor's remarks only reminded the jury that he was an advocate for the State and the victim.

**Am Jur 2d, Trial §§ 544, 545, 554, 555.**

**Propriety and prejudicial effect of prosecutor's remarks as to victim's age, family circumstances, or the like. 50 ALR3d 8.**

**19. Criminal Law § 447 (NCI4th)— capital murder and felony child abuse—prosecutor's argument—fair trial for victim**

The trial court did not err in a prosecution for capital first-degree murder and felony child abuse by not intervening *ex mero motu* when the prosecutor argued that the victim should receive a fair trial. The prosecutor had also told the jury that defendant should receive a fair trial; his subsequent statement amounted to nothing more than a request that the State be given equal consideration.

**Am Jur 2d, Trial §§ 544, 545, 554, 555, 649.**

**Propriety and prejudicial effect of prosecutor's remarks as to victim's age, family circumstances, or the like. 50 ALR3d 8.**

**20. Criminal Law § 463 (NCI4th)— capital murder and felony child abuse—prosecutor's argument—defendant's denial of killing**

The trial court did not err in a prosecution for capital first-degree murder and felony child abuse by not intervening *ex mero motu* when the prosecutor argued that the jury should make the victim's life worth something and not let defendant get away with claiming before trial that her death was an accident. The argument was well-grounded in the record; defendant denied killing the victim prior to trial, stating that she sustained her injuries when she fell off a bed, and his testimony at trial admitting the killing came after extensive evidence which suggested that her injuries could not have been caused by a fall from her bed.

**Am Jur 2d, Trial §§ 544, 545, 554, 555, 649.**

**Propriety and prejudicial effect of prosecutor's remarks as to victim's age, family circumstances, or the like. 50 ALR3d 8.**

**21. Appeal and Error § 421 (NCI4th)— felony child abuse— motion to dismiss charge denied—no argument or authority supporting assignment of error—deemed abandoned**

An assignment of error for which defendant did not make any argument or cite any authority was deemed abandoned.

**Am Jur 2d, Trial §§ 473, 705-707.**

**Construction and application of provision of Rule 51 of Federal Rules of Civil Procedure requiring party objecting**

to instructions or failure to give instruction to jury, to state "distinctly the matter to which he objects and the grounds for objections". 35 ALR Fed. 727.

22. **Appeal and Error § 150 (NCI4th)— capital murder and felony child abuse—claim of double jeopardy—not preserved for appeal**

An issue as to whether defendant's double jeopardy rights were violated when judgment was entered against him for both first-degree murder and felony child abuse was not preserved for appellate review where defendant did not object to the trial court's imposition of punishment for both convictions, did not make any motion to receive a ruling from the trial court as to the constitutionality of sentencing for both convictions, and did not assign error to the failure to dismiss the felony child abuse conviction.

Am Jur 2d, Criminal Law §§ 276, 277, 279; Trial § 707.

Who has custody or control of child within terms of penal statute punishing cruelty or neglect by one having custody or control. 75 ALR3d 933.

Effect of accused's federal constitutional rights on scope of voir dire examination of prospective jurors— Supreme Court cases. 114 L. Ed. 2d 763.

23. **Constitutional Law § 216.1 (NCI4th)— first-degree murder and felony child abuse—no double jeopardy violation**

Assuming the issue had been preserved for appeal, double jeopardy did not preclude punishing defendant for felony child abuse and first-degree murder arising from the same conduct. A trial court in a single trial may impose cumulative punishments under the statutes where a legislature clearly expresses its intent to proscribe and punish exactly the same conduct under two separate statutes. Here the legislature expressly stated that felony child abuse is an offense additional to other criminal provisions and that it is not intended to preclude other sanctions. Moreover, felony child abuse is not a lesser included offense of murder; it requires the State to prove facts not required to prove murder and it addresses a distinct evil.

Am Jur 2d, Criminal Law §§ 276, 277, 279.

STATE v. ELLIOTT

[344 N.C. 242 (1996)]

**Who has custody or control of child within terms of penal statute punishing cruelty or neglect by one having custody or control. 75 ALR3d 933.**

**Effect of accused's federal constitutional rights on scope of voir dire examination of prospective jurors— Supreme Court cases. 114 L. Ed. 2d 763.**

**24. Criminal Law § 1345 (NCI4th)— capital sentencing—especially heinous, atrocious, or cruel aggravating circumstance—evidence sufficient**

The trial court did not err in a capital sentencing proceeding by submitting the especially, heinous, atrocious or cruel aggravating circumstance where defendant grabbed the victim by the hair on the back of her head and slammed her head to the floor six or seven times, causing a massive head injury which led to her death; defendant continued to slap and hit the child in what he claimed was an effort to revive her; the beating left the victim with severe bruises on her legs, abdomen, back, buttocks, chest, shoulders, neck, face, and head; thirty percent of the victim's hair was forcefully ripped from her scalp; the victim attempted to put her arm around defendant's neck shortly after the beating, permitting the inference that she was conscious and in a great deal of pain at that time; the victim was two years old at the time of her death; defendant lived with the victim and her mother and had assumed a parental role in caring for the victim; and the victim's mother permitted defendant to discipline the victim and trusted defendant to take care of the victim while she was at work. This evidence permitted the jury to conclude that the killing would have been physically agonizing or conscienceless, pitiless, or unnecessarily torturous to the victim, and the victim's age and the existence of a parental relationship with defendant could also be considered. There was sufficient evidence to support a finding that the murder was especially heinous, atrocious or cruel.

**Am Jur 2d, Criminal Law § 525; Homicide § 549.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was heinous, cruel, depraved, or the like—post-*Gregg* cases. 63 ALR4th 478.**

STATE v. ELLIOTT

[344 N.C. 242 (1996)]

**25. Criminal Law § 1343 (NCI4th)— capital sentencing— instructions—especially heinous, atrocious, or cruel aggravating circumstance**

The trial court's instruction for the especially heinous, atrocious, or cruel aggravating circumstance in a capital sentencing proceeding was not unconstitutionally vague.

**Am Jur 2d, Criminal Law §§ 525, 536.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was heinous, cruel, depraved, or the like—post-*Gregg* cases. 63 ALR4th 478.**

**26. Criminal Law § 1343 (NCI4th)— capital sentencing— disparity in sentences—especially heinous, atrocious, or cruel aggravating circumstance instruction—not unconstitutional**

The trial court's instruction on the especially heinous, atrocious, or cruel aggravating circumstance was not unconstitutional as applied to defendant in a prosecution for capital first-degree murder and felony child abuse despite defendant's argument that most killings of children by their parents are tried noncapitally and that there is no principled distinction between this case and numerous cases in which such conduct has been punished noncapitally. Disparity in sentences does not render this instruction unconstitutional as applied to defendant.

**Am Jur 2d, Criminal Law §§ 535, 538; Homicide § 525.**

**Modern status of test of criminal responsibility—state cases. 9 ALR4th 526.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was heinous, cruel, depraved, or the like—post-*Gregg* cases. 63 ALR4th 478.**

**27. Criminal Law § 445 (NCI4th)— capital sentencing—prosecutor's argument—killing worst of the worst—not an expression of opinion**

The trial court did not abuse its discretion by failing to intervene *ex mero motu* in a capital sentencing proceeding where the prosecutor argued that this killing was the "worst of the worst." The prosecutor did not state his personal opinion and merely

argued that the jury should conclude from the evidence that it should recommend a sentence of death.

**Am Jur 2d, Trial §§ 648, 649.**

**Propriety and prejudicial effect of prosecutor's remarks as to victim's age, family circumstances, or the like. 50 ALR3d 8.**

28. **Criminal Law § 456 (NCI4th)— capital sentencing—prosecutor's argument—killing worst of the worst—did not diminish juror's responsibility**

A prosecutor's argument in a capital sentencing proceeding that this killing was the "worst of the worst" did not improperly diminish the jury's responsibility for recommending a sentence of death in violation of *Caldwell v. Mississippi*, 472 U.S. 320. The prosecutor's remarks did not tend to suggest that the responsibility for recommending a sentence of death rested elsewhere or that the jurors could rely on judicial or executive review to correct any errors in the jury's verdict.

**Am Jur 2d, Trial §§ 648, 649.**

**Propriety and prejudicial effect of prosecutor's remarks as to victim's age, family circumstances, or the like. 50 ALR3d 8.**

29. **Criminal Law § 450 (NCI4th)— capital sentencing—prosecutor's argument—killing worst of the worst—defendant not placed at unfair disadvantage**

The trial court did not abuse its discretion by not intervening *ex mero motu* in a capital sentencing proceeding where the prosecutor argued that this killing was the "worst of the worst" on the ground that the argument placed defendant at an unfair disadvantage. The prosecutor's argument was reasonable in light of the evidence presented at trial.

**Am Jur 2d, Trial §§ 648, 649.**

**Propriety and prejudicial effect of prosecutor's remarks as to victim's age, family circumstances, or the like. 50 ALR3d 8.**

STATE v. ELLIOTT

[344 N.C. 242 (1996)]

**30. Appeal and Error § 341 (NCI4th)— capital sentencing— prosecutor's argument—failure to assign error**

Defendant did not assign error to the prosecutor's closing arguments involving the value of mitigating circumstances in a capital sentencing proceeding and they are therefore beyond the scope of review. N.C.R. App. P. 10(a).

**Am Jur 2d, Trial §§ 533, 534, 706, 707.**

**Construction and application of provision of Rule 51 of Federal Rules of Civil Procedure requiring party objecting to instructions or failure to give instruction to jury, to state "distinctly the matter to which he objects and the grounds for objections". 35 ALR Fed. 727.**

**31. Criminal Law § 454 (NCI4th)— capital sentencing—prosecutor's argument—balancing aggravating and mitigating circumstances**

The trial court did not abuse its discretion by not intervening *ex mero motu* in a capital sentencing proceeding where defendant contended that the prosecutor's argument suggested that defendant was required to present sufficient evidence to convince the jury not to recommend death and that the jury should weigh mitigating circumstances against the value of the victim's life. Although defendant did not assign error and the argument was beyond the scope of appellate review, defendant would not be entitled to relief if the arguments were considered because, in context, the thrust of the prosecutor's argument was that the especially heinous, atrocious, or cruel nature of the killing justified imposing the death penalty. While it was improper to suggest that the jury should balance the mitigating circumstances against the victim's life, the remarks were not so grossly improper as to require the trial court to intervene *ex mero motu*.

**Am Jur 2d, Trial §§ 554, 555.**

**Propriety and prejudicial effect of prosecutor's remarks as to victim's age, family circumstances, or the like. 50 ALR3d 8.**

**Sufficiency of evidence, for purposes of death penalty, to establish statutory aggravating circumstance that murder was heinous, cruel, depraved, or the like—post-*Gregg* cases. 63 ALR4th 478.**

**32. Criminal Law § 454 (NCI4th)— capital sentencing—prosecutor's arguments—no suggestion that death divinely required**

A prosecutor's remarks in a capital sentencing hearing were not so grossly improper as to require intervention *ex mero motu* where defendant contended that the remarks constituted "theobabble" which suggested that the death penalty was divinely required to redeem or give value to the life of the victim. The prosecutor's remarks did not suggest that the law enforcement powers of the State were divinely inspired or ordained by God and did not improperly suggest that the death penalty was divinely required.

**Am Jur 2d, Trial §§ 554, 555.**

**Propriety of reference, in instruction in criminal case, to jurors' duty to God. 39 ALR3d 1445.**

**33. Criminal Law § 442 (NCI4th)— capital sentencing—prosecutor's argument—jury as last link in law enforcement chain**

The trial court did not abuse its discretion by not intervening *ex mero motu* in a prosecutor's argument in a capital sentencing proceeding where the prosecutor argued that the jury was the last link in the State's chain of law enforcement and that the law enforcement officers and the prosecutor had done all they could. It is improper to suggest that the jury is an arm of the State or the last link in the State's chain of law enforcement, but not so grossly improper as to require intervention *ex mero motu*. The essence of the prosecutor's argument was that defendant had committed a serious crime and that the time had come for the jury to make a decision in the case.

**Am Jur 2d, Trial §§ 554, 555, 649.**

**34. Criminal Law § 461 (NCI4th)— capital sentencing—prosecutor's argument—supported by facts and inferences or not grossly improper**

A prosecutor's argument in a capital sentencing hearing was not so grossly improper as to require intervention *ex mero motu* where defendant contended that there was no evidence to support the argument that the victim begged for her life and that the prosecutor referred to what the victim could not say. The prosecutor's argument related to the nature of defendant's crime and

was supported by facts in evidence and reasonable inferences therefrom. While there was no evidence suggesting that the victim begged for her life during the beating, the argument was not so grossly improper as to require the trial court to intervene.

**Am Jur 2d, Trial §§ 554, 555, 649.**

**Propriety and prejudicial effect of prosecutor's remarks as to victim's age, family circumstances, or the like. 50 ALR3d 8.**

35. **Criminal Law § 1363 (NCI4th)— capital sentencing—nonstatutory mitigating circumstance—good employment record—not found**

There was no error in a capital sentencing proceeding where the jury failed to find the nonstatutory mitigating circumstance that defendant had a good employment record. Defendant's evidence was contradicted by evidence that defendant was unemployed at the time of the murder, worked sporadically in the months preceding the murder, and had assaulted a supervisor in 1992. The jury either rejected the evidence of a good employment record or determined that this nonstatutory circumstance had no mitigating value.

**Am Jur 2d, Trial § 841.**

36. **Criminal Law § 1373 (NCI4th)—death penalty—not disproportionate**

A sentence of death was not disproportionate where the evidence in the capital sentencing proceeding supported the especially heinous, atrocious, or cruel aggravating circumstance found by the jury; the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor; and, comparing defendant's case to similar cases in which the death penalty was imposed and considering both the crime and defendant, the penalty of death was not disproportionate or excessive as a matter of law. None of the cases found disproportionate involved the murder of a child and only two involved the especially heinous, atrocious, or cruel aggravating circumstance; both of those are easily distinguishable; although juries have returned sentences of life imprisonment in cases involving the murder of a child by a parent or adult caretaker, the fact that juries have recommended life imprisonment in factually similar cases is not alone dispositive; and this case is most analo-

STATE v. ELLIOTT  ·

[344 N.C. 242 (1996)]

gous to cases in which the death penalty was held not to be disproportionate.

**Am Jur 2d, Criminal Law §§ 628, 627, 628; Homicide § 556.**

**Supreme Court's views on constitutionality of death penalty and procedures under which it is imposed. 51 L. Ed. 2d 886.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from a judgment imposing a sentence of death entered by Long (James M.), J., on 3 May 1994 in Superior Court, Davidson County, upon a jury verdict of guilty of first-degree murder. Defendant's motion to bypass the Court of Appeals as to an additional judgment imposed for felony child abuse was allowed on 17 April 1995. Heard in the Supreme Court 12 December 1995.

*Michael F. Easley, Attorney General, by Gail E. Weis, Associate Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Mark D. Montgomery, Assistant Appellate Defender, for defendant-appellant.*

PARKER, Justice.

Defendant John Robert Elliott was tried capitally on an indictment charging him with the first-degree murder of Brandie Jean Freeman ("Brandie"). The jury returned a verdict finding defendant guilty as charged based on premeditation and deliberation. The jury also found defendant guilty of felony child abuse. Following a capital sentencing proceeding pursuant to N.C.G.S. § 15A-2000, the jury recommended that defendant be sentenced to death for the murder; and the trial court entered judgment accordingly. The trial court also sentenced defendant to a term of ten years' imprisonment for felony child abuse. For the reasons discussed herein, we conclude that the jury selection, guilt-innocence phase, and sentencing proceeding of defendant's trial were free from prejudicial error and that the death sentence is not disproportionate. Accordingly, we uphold defendant's conviction and sentence for first-degree murder and his conviction and sentence for felony child abuse.

Brandie Jean Freeman was two years old at the time of her death. Defendant was the boyfriend of Brandie's mother, Bobbie Linker.

**STATE v. ELLIOTT**

[344 N.C. 242 (1996)]

Soon after moving into their home in November of 1992, defendant began taking care of Brandie while her mother was at work. Ms. Linker permitted defendant to discipline Brandie; and the evidence suggested that Brandie sustained bruises, black eyes, and other injuries while in defendant's care. After Ms. Linker became concerned that defendant was spanking Brandie too hard, defendant began using the "punishment position," a form of discipline described by witnesses as requiring Brandie to lie on her stomach with her arms and legs raised for ten to twenty minutes.

On the morning of 3 January 1993, Bobbie Linker went to work and left Brandie in defendant's care. Several hours later Brandie woke defendant and told him that she had "poopied" in her pants. This made defendant angry. Defendant cleaned and changed the victim and told her to assume the punishment position. Defendant went to the kitchen to get a glass of water for himself. When defendant returned Brandie was in the punishment position with her head raised. Defendant grabbed Brandie by the hair on the back of her head and slammed her head to the floor six or seven times.

Defendant asked the child if she was okay, and Brandie attempted to raise her arm and put it around defendant's neck. When defendant failed to get any further response from Brandie, he shook her, slapped her, and hit her in what he claimed was an effort to obtain a response. As part of this effort, defendant took Brandie to the bathroom, where he ran water over her and continued to hit and slap the child repeatedly.

At 11:45 a.m., forty-five minutes after slamming Brandie's head to the floor, defendant called Bobbie Linker and asked her if she could come home. Defendant explained that Brandie had "fallen again." When Ms. Linker arrived at her house, Brandie appeared lifeless. Defendant told Ms. Linker that Brandie had fallen off a bed.

Defendant and Ms. Linker drove Brandie to Rowan Memorial Hospital. Because of the severe nature of her injuries, Brandie was transferred to Baptist Hospital in Winston-Salem, where she died the following day.

Dr. David Skowronek, an expert in emergency medicine, treated Brandie in the emergency room at Rowan Memorial Hospital. Skowronek observed a severe head injury and saw bruises on Brandie's cheeks, eyes, pubic area, buttocks, feet, and the entire front of her chest. Skowronek testified that there was absolutely no way

that Brandie could have sustained her injuries merely by falling off a bed.

Dr. Sarah Sinal, an expert in pediatrics and child abuse, examined Brandie after her death. Sinal observed a massive head injury; bruises over the entire course of the body; a fracture of the left wrist; and a ruptured frenulum, the membrane that attaches the lip to the gum. Sinal noticed that a great deal of hair had been forcefully pulled from Brandie's head. Sinal testified that almost all Brandie's injuries would not occur in the course of a normal child's life without someone's knowing they had happened and that the injuries could not have been sustained by falling off a bed which was seventeen inches high. In Sinal's opinion the injuries suffered by Brandie were consistent with the "battered child syndrome." Sinal opined that many of the blows to the head would have been very painful and that Brandie was probably conscious if she was able to lift her arm in an attempt to put it around defendant's neck.

Dr. Donald Jason performed an autopsy on 5 January 1993. Jason observed a substantial, forceful, blunt-force injury to the head which required more than one blow. The cause of death was the massive head injury. Jason also found multiple injuries to Brandie's chest, back, buttocks, arms, and legs. Microscopic examination of Brandie's head revealed that thirty percent of Brandie's hair had been pulled from her scalp. Brandie's injuries were consistent with having her head slammed to the floor several times while lying in a prone position on the floor.

Defendant testified during the guilt-innocence phase. According to defendant Brandie woke him to tell him that she had "poopied" in her pants. Angry, defendant cleaned Brandie, changed her, and told her to get in the punishment position. Defendant went to the kitchen to get a drink of water. When he returned Brandie did not have her head down, so he grabbed her by the hair on the back of her head and pushed her head to the floor three or four times. Contradicting evidence offered by the State which suggested that he was "coming off crack" cocaine at the time of the killing, defendant stated that he did not use crack cocaine on the day of the killing.

During the sentencing proceeding the State initially relied on the evidence presented during the guilt-innocence phase.

Defendant presented evidence that he had no infractions at Central Prison, that his school records suggested no disciplinary

problems, and that he was a good employee. Defendant also presented numerous witnesses who testified to his good character, his loving relationships with family and friends, and his good relationship with Brandie.

Defendant also offered the testimony of Dr. John Warren, an expert in forensic psychology. Warren testified that defendant had substance abuse problems; that defendant's long-term use of marijuana and cocaine could cause him to be irritable; and that if defendant was "coming off crack" cocaine, his ability to conform his behavior to the dictates of the law could have been impaired.

In rebuttal the State presented the testimony of Oscar Edwards, who had been one of defendant's supervisors at Lothridge Plumbing Company. Edwards stated that on one occasion defendant cursed him, pushed him, and knocked his glasses off his head when he corrected defendant on the job.

Additional facts will be presented as necessary to address specific issues.

## JURY SELECTION

By several assignments of error, defendant contends that the trial court abused its discretion by unduly restricting his *voir dire* of prospective jurors. "The *voir dire* of prospective jurors serves a twofold purpose: (i) to determine whether a basis for challenge for cause exists, and (ii) to enable counsel to intelligently exercise peremptory challenges." *State v. Gregory*, 340 N.C. 365, 388, 459 S.E.2d 638, 651 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 478 (1996). "Regulation of the manner and the extent of inquiries on *voir dire* rests largely in the trial court's discretion." *State v. Green*, 336 N.C. 142, 164, 443 S.E.2d 14, 27, *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 547 (1994). "In order for the defendant to show reversible error, he must show that the trial court abused its discretion and that he was prejudiced thereby." *State v. Jones*, 339 N.C. 114, 134, 451 S.E.2d 826, 835 (1994), *cert. denied*, —— U.S. ——, 132 L. Ed. 2d 873 (1995).

[1] Defendant argues that the trial court erred by sustaining objections to questions which inquired into the ability of prospective jurors to stand by their convictions during jury deliberations. In the first instance cited by defendant, the trial court sustained an objection to the form of the following question:

STATE v. ELLIOTT

[344 N.C. 242 (1996)]

In other words, if you believe something, you don't have to just change over because ten others did or nine voted a certain way. If you strongly believe in your heart that particular thing, that you can remain steadfast in that and will each of you do that particular thing?

"Counsel may not pose hypothetical questions designed to elicit in advance what the juror's decision will be under a certain state of the evidence or upon a given state of facts." *State v. Vinson*, 287 N.C. 326, 336, 215 S.E.2d 60, 68 (1975), *death sentence vacated*, 428 U.S. 902, 49 L. Ed. 2d 1206 (1976). "[S]uch questions tend to 'stake out' the juror and cause him to pledge himself to a future course of action." *Id.* In *State v. Bracey*, 303 N.C. 112, 277 S.E.2d 390 (1981), the defendant asked a question which required each prospective juror to assume that he had formed the opinion that the defendant was not guilty after the State presented all of its evidence. The defendant's question asked whether any juror would change his opinion simply because the eleven other jurors were of the opinion defendant was guilty. *Id.* at 118-19, 277 S.E.2d at 395. We concluded that this question could not reasonably be expected to result in an answer bearing on the qualification of the juror and that the question was designed to commit the juror to a fixed position in regard to the evidence. *Id.* A question which is designed to determine how well a prospective juror would stand up to other jurors in the event of a split decision amounts to an impermissible "stake out." *State v. Syriani*, 333 N.C. 350, 374, 428 S.E.2d 118, 130, *cert. denied*, 510 U.S. 948, 126 L. Ed. 2d 341 (1993). The excluded question in this case seems to be designed to determine how well prospective jurors would stand up to other jurors in the event of a split decision. For this reason the trial court did not abuse its discretion in sustaining the objection to the form of the question.

[2] Defendant's next question asked the following: "Will each of you make up your own mind about each and every aspect of this case?" The trial court sustained the State's objection to the form of this question. "[H]ypothetical questions so phrased as to be ambiguous and confusing or containing incorrect or inadequate statements of the law are improper and should not be allowed." *Vinson*, 287 N.C. at 336, 215 S.E.2d at 68. While each juror is required to make his or her own decisions about a case, each juror also has a duty to deliberate with other jurors with a view to reaching an agreement. *See* N.C.G.S. § 15A-1235(b) (1988). In the context of this portion of defendant's *voir dire*, the excluded question may have had the tendency to suggest that jurors should make decisions without considering the opin-

ions of other jurors. For this reason the trial court did not abuse its discretion in sustaining the objection to the form of defendant's question. Furthermore, a careful review of the transcript of the *voir dire* shows that the trial court permitted defendant to explore this panel of prospective jurors' understanding of their right to reach their own opinions. In response each prospective juror indicated he or she understood that each juror had one vote, that no one juror's vote was stronger than any other juror's vote, and that each juror had a right to remain steadfast to his or her own resolve about a particular issue. Accordingly, defendant cannot show any prejudicial error in the trial court's ruling.

[3] Defendant next argues that the trial court erred in restricting his *voir dire* of prospective juror Bryant. The following exchange occurred between defendant and Bryant:

[D]o you understand . . . that while the law requires you to deliberate with the other jurors in order to try to reach a unanimous decision, that you do have the right to stand by your beliefs in this case?

A. That's exactly right.

Q. And you would do that?

[PROSECUTOR]: Objection.

THE COURT: Sustained.

Bryant informed defendant that he understood his right to stand by his beliefs during jury deliberations. The question excluded by the court prevented defendant from asking Bryant whether he would do so in this case. This question amounted to an impermissible attempt to "stake out" the prospective juror. *Vinson*, 287 N.C. at 336, 215 S.E.2d at 68. Accordingly, the trial court did not abuse its discretion in sustaining the objection to the excluded question.

[4] Next, defendant argues that the trial court erred by preventing defense counsel from asking the prospective jurors whether they would "hold to" the presumption of innocence. The presumption of innocence "is an instrument of proof created by the law in favor of one accused, whereby his innocence is established until sufficient evidence is introduced to overcome the proof which the law has created." *Coffin v. United States*, 156 U.S. 432, 459, 39 L. Ed. 481, 493 (1895), *quoted in State v. Marley*, 321 N.C. 415, 425, 364 S.E.2d 133, 139 (1988). The question asking prospective jurors whether they

would "hold to" the presumption of innocence may have suggested that jurors should do so without considering the evidence offered by the State to overcome the presumption. If so, the question amounted to an impermissible attempt to "stake out" the jurors. *Vinson*, 287 N.C. at 336, 215 S.E.2d at 68. For this reason we conclude that the trial court did not abuse its discretion in sustaining the objection. This assignment of error is overruled.

[5] Defendant next assigns as error the trial court's refusal to permit him to define first-degree murder or malice for prospective jurors. Defendant argues that a defendant has the right to inquire whether prospective jurors would have difficulty following the law and that a defendant must be able to ask questions which state the law in order to do this properly.

The trial court sustained an objection to defendant's attempt to inform the jury that first-degree murder

is the killing of another human being with malice, which I think the judge will explain to you later is an evil intent, ill will—with malice with premeditation . . . and with deliberation.

Later, the trial court sustained an objection to defendant's attempt to define malice by stating that it generally "means with ill will." The trial court ruled that it would not allow defendant to explain malice to the prospective jurors and sustained the State's objections to further attempts by defendant during *voir dire* to define first-degree murder or malice.

"Malice is not only hatred, ill-will, or spite, as it is ordinarily understood—to be sure that is malice—but it also means that condition of mind which prompts a person to take the life of another intentionally without just cause, excuse, or justification." *State v. Benson*, 183 N.C. 795, 799, 111 S.E. 869, 871 (1922), *overruled on other grounds by State v. Phillips*, 264 N.C. 508, 142 S.E.2d 337 (1965). Defendant's attempt to define malice as simply meaning ill will did not provide the jury with a complete statement of the law. Furthermore, it is well within the discretion of the trial court to prohibit counsel from instructing prospective jurors on the law during *voir dire. State v. Huffstetler*, 312 N.C. 92, 103, 322 S.E.2d 110, 118 (1984), *cert. denied*, 471 U.S. 1009, 85 L. Ed. 2d 169 (1985). Defendant did not ask the trial court to define first-degree murder or malice for the prospective jurors. After careful review of the transcript, we con-

clude that the trial court did not abuse its discretion by preventing defendant from doing so. This assignment of error is overruled.

**[6]** Defendant next contends that the trial court erred in denying defendant's pretrial motion to permit *voir dire* of prospective jurors on their perceptions of parole eligibility. Defendant's argument on this issue has previously been rejected by this Court. *State v. Payne*, 337 N.C. 505, 516, 448 S.E.2d 93, 99 (1994), *cert. denied*, —— U.S. ——, 131 L. Ed. 2d 292 (1995). Since defendant would have been eligible for parole if given a life sentence, the decision in *Simmons v. South Carolina*, 512 U.S. 154, 129 L. Ed. 2d 133 (1994), does not affect our position on this issue. *Id.* at 516-17, 448 S.E.2d at 99-100. This assignment of error is overruled.

**[7]** Defendant also contends that the trial court erred by not granting defendant's pretrial motion to instruct the jury on parole eligibility. "This Court has consistently held that the possibility of parole is not a relevant issue during jury selection, closing argument, or jury deliberation in a capital sentencing proceeding." *State v. Bacon*, 337 N.C. 66, 98, 446 S.E.2d 542, 558 (1994), *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 1083 (1995). This assignment of error is overruled.

**[8]** Defendant next contends that the trial court erred by restricting defendant's *voir dire* of prospective jurors with respect to their ability to consider a sentence of life imprisonment. Defendant argues that by preventing defendant from asking the excluded questions, defendant's right to life-qualify the jury was improperly restricted. *See Morgan v. Illinois*, 504 U.S. 719, 119 L. Ed. 2d 492 (1992); *State v. Conner*, 335 N.C. 618, 440 S.E.2d 826 (1994). We conclude that defendant has failed to show any prejudicial error.

Defendant argues that the trial court erred by disallowing two questions asking prospective juror Bryant whether he could think of any situation where he could vote to impose a sentence other than death for first-degree murder. "Counsel should not fish for answers to legal questions before the judge has instructed the juror on applicable legal principles by which the juror should be guided. . . . Jurors should not be asked what kind of verdict they would render under certain named circumstances." *State v. Phillips*, 300 N.C. 678, 682, 268 S.E.2d 452, 455 (1980), *quoted in State v. Robinson*, 339 N.C. 263, 273, 451 S.E.2d 196, 202 (1994), *cert. denied*, —— U.S. ——, 132 L. Ed. 2d 818 (1995). In *Robinson* the trial court sustained an objection to a question asking prospective jurors whether they could follow the trial court's instructions even though the defendant had

killed three people and had a previous conviction for first-degree murder. *Robinson*, 339 N.C. at 272, 451 S.E.2d at 202. The Court found that the defendant's question was "an improper attempt to 'stake out' the jurors as to their answers to legal questions before they are informed of legal principles applicable to their sentencing recommendation." *Id.* at 273, 451 S.E.2d at 202. In the present case we conclude that the questions asking prospective juror Bryant whether he could think of any situation where he could vote to impose a sentence other than death for first-degree murder were an impermissible attempt to determine what kind of verdict he would render under certain circumstances.

**[9]** Defendant also argues that the trial court erred by sustaining the State's objections to questions asked of prospective juror Legge. The transcript shows that defendant was permitted to ask Legge whether she would automatically impose the death penalty and that she answered by stating that she would follow the instructions given by the trial court. Legge stated that the fact that child abuse was involved would not change her answer. Defendant cannot show that any error in restricting further *voir dire* of Legge was prejudicial. Defendant exercised a peremptory challenge to excuse Legge. Furthermore, defendant did not exhaust his peremptory challenges in selecting the twelve jurors who decided his case. Accordingly, defendant cannot show any prejudicial error in the trial court's rulings restricting *voir dire* of prospective juror Legge. This assignment of error is overruled.

## GUILT-INNOCENCE PHASE

**[10]** In his next assignment of error, defendant contends that the trial court erred in denying defendant's motion to dismiss the charge of first-degree murder on the grounds that there was insufficient evidence of specific intent to kill and insufficient evidence of deliberation. Defendant argues that he was provoked by Brandie's conduct and that he could not have formed a specific intent to kill in a cool state of blood.

> In ruling on a motion to dismiss a first-degree murder charge, the trial court must consider the evidence in the light most favorable to the State and give the State every reasonable inference to be drawn therefrom. *State v. Jackson*, 317 N.C. 1, 22, 343 S.E.2d 814, 827 (1986), *judgment vacated on other grounds*, 479 U.S. 1077, 94 L. Ed. 2d 133 (1987). Substantial evidence must be introduced tending to prove the essential elements of the crime

charged and that defendant was the perpetrator. *Id.* The evidence may contain contradictions or discrepancies; these are for the jury to resolve and do not require dismissal. *Id.* at 22-23, 343 S.E.2d at 827.

*State v. Truesdale,* 340 N.C. 229, 234, 456 S.E.2d 299, 302 (1995).

First-degree murder "is the unlawful killing of a human being with malice and with premeditation and deliberation." *State v. Fleming,* 296 N.C. 559, 562, 251 S.E.2d 430, 432 (1979). "Premeditation means that the act was thought out beforehand for some length of time, however short, but no particular amount of time is necessary for the mental process of premeditation." *Conner,* 335 N.C. at 635, 440 S.E.2d at 835-36. "Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation." *Id.* at 635, 440 S.E.2d at 836. "The phrase 'cool state of blood' means that the defendant's anger or emotion must not have been such as to overcome the defendant's reason." *State v. Thomas,* 332 N.C. 544, 560-61, 423 S.E.2d 75, 84 (1992).

"Premeditation and deliberation relate to mental processes and ordinarily are not readily susceptible to proof by direct evidence. Instead, they usually must be proved by circumstantial evidence." *State v. Brown,* 315 N.C. 40, 59, 337 S.E.2d 808, 822-23 (1985), *cert. denied,* 476 U.S. 1164, 90 L. Ed. 2d 733 (1986), *overruled on other grounds by State v. Vandiver,* 321 N.C. 570, 364 S.E.2d 373 (1988). In the present case the evidence tended to show that defendant grabbed the two-year-old victim by the hair on the back of her head and forcefully slammed her head to the floor six or seven times. Viewing this evidence in the light most favorable to the State, the jury could have concluded that defendant knew that this conduct would result in Brandie's death and that he intended to kill her. *See State v. Greene,* 332 N.C. 565, 572-73, 422 S.E.2d 730, 734 (1992).

The evidence was sufficient to permit the jury to conclude that defendant acted with deliberation. The evidence tended to show that defendant became angry when Brandie soiled her pants and failed to keep her head on the floor while in the punishment position. Defendant went into the kitchen to get a glass of water after instructing Brandie to assume the punishment position and before grabbing her head and repeatedly slamming it to the floor. This evidence, when viewed in the light most favorable to the State, permitted the jury to

conclude that defendant formed the intent to kill and carried out that intent in a cool state of blood and not as a result of a violent passion attributable to sufficient provocation. We conclude that the evidence was sufficient to support a verdict of guilty of first-degree murder based on premeditation and deliberation. This assignment of error is without merit.

[11] In his next assignment of error, defendant contends that the trial court committed plain error in its instruction on malice. After defining malice the trial court gave the following instruction:

Malice may be implied from the evidence that the deceased's death resulted from an attack by hand alone without the use of other weapons when the attack was made by a strong or mature person upon a weaker or defenseless person.

Defendant contends that this instruction unconstitutionally reduced the State's burden of proof on malice. As defendant did not object to this instruction at trial, defendant must show plain error. "[T]he term 'plain error' does not simply mean obvious or apparent error." *State v. Collins*, 334 N.C. 54, 62, 431 S.E.2d 188, 193 (1993); *accord State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983). "In order to rise to the level of plain error, the error in the trial court's instructions must be so fundamental that (i) absent the error, the jury would have reached a different verdict; or (ii) the error would constitute a miscarriage of justice if not corrected." *State v. White*, 340 N.C. 264, 299, 457 S.E.2d 841, 862, *cert. denied*, —— U.S. ——, 133 L. Ed. 2d 436 (1995); *accord Collins*, 334 N.C. at 62, 431 S.E.2d at 193. We conclude that the trial court's instruction on malice did not constitute error, much less plain error.

Defendant argues that the instruction created a conclusive presumption of malice. The instruction informed the jury that it could infer malice from an attack by hand alone when the attack was made by a strong or mature person upon a weaker or defenseless person. This charge permitted the jury to infer malice from the evidence presented in this case but did not require the jury to do so.

Defendant further argues that it is unreasonable to infer malice from evidence that an adult attacked a child by hand alone. This Court has previously stated that malice may be inferred from the "willful blow by an adult on the head of an infant." *State v. Perdue*, 320 N.C. 51, 58, 357 S.E.2d 345, 350 (1987); *accord State v. West*, 51 N.C. 505, 509 (1859); *State v. Sallie*, 13 N.C. App. 499, 510-12, 186

S.E.2d 667, 674-75, *cert. denied,* 281 N.C. 316, 188 S.E.2d 900 (1972). Malice is not implied when death ensues from an attack made with the hands or feet on a strong or mature person, death not ordinarily being caused by such an attack. *See West,* 51 N.C. at 509; *Sallie,* 13 N.C. App. at 510-11, 186 S.E.2d at 674-75. However, this reasoning is inapplicable when a strong or mature person makes an attack by hands or feet alone upon a two-year-old child. Such an attack is reasonably likely to result in death or serious bodily injury.

In *State v. Lang,* 309 N.C. 512, 308 S.E.2d 317 (1983), the Court stated that

> [t]he fact that a defendant struck a person with his hand or kicked a person [with his feet] and proximately caused that person's death would not support either a presumption of malice as a matter of law or an inference of malice as a matter of fact unless the defendant was then using his hands or feet as deadly weapons.

*Id.* at 524, 308 S.E.2d at 323. The evidence in *Lang* tended to show that the victim, an adult woman, was intoxicated at the time the defendant and another adult man kicked her with their feet and attacked her with their hands. Defendant also cut the victim with a knife, and his accomplice hit her with a baseball bat. *Id.* at 526, 308 S.E.2d at 324. The trial court gave the following instruction, which the Court determined to be prejudicial error:

> If the state proves beyond a reasonable doubt, or if it's admitted that the defendant intentionally kicked, cut or struck [the victim], thereby proximately causing [the victim's] death, you may infer first that the killing was unlawful and second, that it was done with malice. But, you are not compelled to do so. You may consider this along with other facts and circumstances in determining whether the killing was unlawful and whether it was done with malice.

*Id.* at 524, 308 S.E.2d at 323. We stated that the trial court could have instructed the jury, on the facts of that case, that the jury could infer malice if it found "from the evidence and beyond a reasonable doubt that the defendant intentionally assaulted the deceased with his hands, fists, or feet, *which were then used as deadly weapons.*" *Id.* at 526-27, 308 S.E.2d at 325.

The instruction given in the present case is distinguishable from the instruction given in *Lang* by the fact that it required the jury to

find that "the attack was made by a strong or mature person upon a weaker or defenseless person." While the evidence in *Lang* suggested that defendant was an adult and that the victim was severely intoxicated at the time she was killed, the instruction given by the trial court permitted the jury to infer malice simply from the evidence that the defendant kicked or struck the victim. The instruction in *Lang* neither required the jury to find that the defendant used his hands, fists, or feet as deadly weapons nor required the jury to find that "the attack was made by a strong or mature person upon a weaker or defenseless person."

We conclude that defendant has failed to show any error, much less plain error, in the trial court's instruction on malice. Accordingly, this assignment of error is overruled.

[12] Defendant next contends that the trial court's instruction on premeditation and deliberation constituted plain error. The trial court gave the following instruction:

> Fourth, the State must prove beyond a reasonable doubt that the defendant acted with premeditation. That is, that he formed the intent to kill Brandie Freeman over some period of time, however short, before he acted.

> Fifth, the State must prove beyond a reasonable doubt that the defendant acted with deliberation, which means that he acted, that is, he must have acted while he was in a cool state of mind. This does not mean that there had to be a total absence of passion or emotion. If the intent to kill was formed with a fixed purpose, not under the influence of some suddenly aroused violent passion, it is immaterial that the defendant was in a state of passion or excited when the intent was carried into effect. I instruct you, members of the jury, that neither premeditation nor deliberation are usually susceptible of direct proof. They must be proved by proof of circumstances from which they may be inferred, such as the lack of provocation by the deceased, conduct of the defendant before, during and after the killing, any brutal or vicious circumstances of the killing or the manner in which or the means by which the killing was done.

Defendant first argues that the jury could have understood the instruction to express the trial court's opinion that the State had proven "lack of provocation." The instruction informed the jury that lack of provocation by the deceased is a circumstance which, if

STATE v. ELLIOTT

[344 N.C. 242 (1996)]

shown to exist, permits premeditation and deliberation to be inferred. *See State v. Leach*, 340 N.C. 236, 241, 456 S.E.2d 785, 788-89 (1995). The instruction did not suggest, and could not be reasonably understood to imply, that the trial court was of the opinion that the State had proven lack of provocation.

[13] Defendant next argues that the instruction was flawed in that it permitted the jury to convict defendant based upon lack of evidence of provocation and improperly narrowed the scope to lack of provocation "by the deceased." The instruction given by the trial court is based upon the pattern jury instructions. N.C.P.I.—Crim. 206.11 (1994). The instruction requires the State to prove lack of provocation by the deceased and does not permit the jury to infer premeditation and deliberation from lack of evidence of provocation. Furthermore, this instruction is consistent with this Court's repeated statement that lack of provocation by the deceased is a circumstance that may be considered in determining whether a killing was done with premeditation and deliberation. *See, e.g., State v. Alston*, 341 N.C. 198, 245, 461 S.E.2d 687, 713 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 100 (1996); *Truesdale*, 340 N.C. at 234-35, 456 S.E.2d at 302; *Brown*, 315 N.C. at 59, 337 S.E.2d at 823.

[14] Defendant also argues that the instruction improperly renders any nonaccidental killing of a child a first-degree murder since a child is incapable of "legal" provocation. This argument has no merit in this case. The trial court did not instruct the jury that a child was incapable of provocation.

Defendant further argues that the instruction erroneously informed the jury that deliberation means that defendant "acted while he was in a cool state of mind." Defendant argues that defendant must have been in a cool state of mind when he formed the intent to kill. "Deliberation means an intent to kill, carried out in a cool state of blood, in furtherance of a fixed design for revenge or to accomplish an unlawful purpose and not under the influence of a violent passion, suddenly aroused by lawful or just cause or legal provocation." *Conner*, 335 N.C. at 635, 440 S.E.2d at 836. The trial court's instruction is consistent with the pattern jury instructions and our definition of deliberation. We conclude that defendant has failed to show any plain error in the trial court's instruction on premeditation and deliberation. Accordingly, this assignment of error is overruled.

[15] By his next assignment of error, defendant contends that the trial court erred in denying defendant's pretrial motion to exclude the

STATE v. ELLIOTT

[344 N.C. 242 (1996)]

testimony of Dr. Sarah Sinal with respect to the "battered child syndrome." Defendant argues that Sinal's testimony was irrelevant and unfairly prejudicial. We disagree.

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." N.C.G.S. § 8C-1, Rule 401 (1992). Generally, all relevant evidence is admissible. N.C.G.S. § 8C-1, Rule 402 (1992). This Court has consistently stated that "in a criminal case every circumstance calculated to throw any light upon the supposed crime is admissible and permissible." *State v. Collins*, 335 N.C. 729, 735, 440 S.E.2d 559, 562 (1994).

Relevant evidence may, however, be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C.G.S. § 8C-1, Rule 403 (1992). "Whether to exclude relevant but prejudicial evidence under Rule 403 is a matter left to the sound discretion of the trial court." *State v. Handy*, 331 N.C. 515, 532, 419 S.E.2d 545, 554 (1992). We conclude that the trial court did not abuse its discretion by permitting Sinal to give opinion testimony with respect to the injuries incurred by the victim.

Sinal, who was qualified as an expert in pediatrics and child abuse, gave extensive testimony with respect to the nature and extent of Brandie's injuries. Sinal testified that most of the injuries would not ordinarily be sustained in the course of a normal child's life and that the injuries could not have resulted from an accidental fall from a bed. Sinal further testified that all of Brandie's injuries were consistent with the battered child syndrome.

This Court has previously approved the admission of expert testimony with respect to the battered child syndrome. *State v. Wilkerson*, 295 N.C. 559, 568-71, 247 S.E.2d 905, 911-12 (1978). Evidence demonstrating the battered child syndrome " 'simply indicates that a child found with [certain injuries] has not suffered those injuries by accidental means.' " *Id.* at 570, 247 S.E.2d at 911 (quoting *People v. Jackson*, 18 Cal. App. 3d 504, 507, 95 Cal. Rptr. 919, 921 (1971)). "When offered to show that certain injuries are a product of child abuse, rather than accident, evidence of prior injuries is relevant even though it does not purport to prove the identity of the per-

son who might have inflicted those injuries." *Estelle v. McGuire*, 502 U.S. 62, 68, 116 L. Ed. 2d 385, 396 (1991).

In the present case Sinal's testimony was relevant to show that Brandie was killed by intentional means. Sinal's testimony with respect to the number, nature, and extent of Brandie's injuries was also relevant to show premeditation and deliberation. We conclude that Sinal's testimony was relevant and that the trial court did not abuse its discretion under Rule 403 in permitting the State to present this evidence to the jury. Accordingly, this assignment of error is overruled.

[16] Defendant next contends that the trial court committed plain error by failing to instruct the jury that absence of motive is a circumstance which could be considered in determining defendant's guilt or innocence. The trial court is required to instruct the jury on all substantial features of a case. *State v. Rose*, 323 N.C. 455, 458, 373 S.E.2d 426, 428 (1988). "In the absence of a special request the trial judge is not required to instruct the jury on subordinate features of a case." *State v. Lester*, 289 N.C. 239, 243, 221 S.E.2d 268, 271 (1976). Motive is not an element of first-degree murder, nor is its absence a defense. *State v. Gainey*, 343 N.C. 79, 84, 468 S.E.2d 227, 230 (1996); *State v. Van Landingham*, 283 N.C. 589, 600, 197 S.E.2d 539, 546 (1973). The presence or absence of motive is merely a circumstance which may be considered in determining guilt or innocence in a criminal case. *Van Landingham*, 283 N.C. at 600, 197 S.E.2d at 546. We conclude that absence of motive is a subordinate feature of a first-degree murder case. Accordingly, the trial court did not err in failing to instruct the jury on motive in the absence of a request from defendant. This assignment of error is overruled.

[17] Defendant next contends that the trial court erred by permitting the prosecutor to make certain arguments at the close of the guilt-innocence phase of the trial.

As defendant failed to object to any of these arguments at trial, they are reviewable only to determine whether they were so grossly improper that the trial court erred by failing to intervene *ex mero motu* to correct the errors. *State v. Sexton*, 336 N.C. 321, 349, 444 S.E.2d 879, 895, *cert. denied*, —— U.S. ——, 130 L. Ed. 2d 429 (1994). "[T]he impropriety of the argument must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was

STATE v. ELLIOTT

[344 N.C. 242 (1996)]

prejudicial when he heard it." *State v. Johnson*, 298 N.C. 355, 369, 259 S.E.2d 752, 761 (1979).

*Gregory*, 340 N.C. at 424, 459 S.E.2d at 672.

Defendant first contends that the prosecutor asked the jurors to put themselves in the position of the victim with the following argument:

Brandie Jean Freeman. Her date of birth, July the 5th, 1990. Her date of death, January the 4th, 1993. About two and a half years old. Her epitaph would read like this: (Mr. Morris on the table laying [sic] on stomach with legs up and arms behind his back and head up.)

"I was in the punishment position, I don't know how long, and I couldn't keep my head up (demonstrating). And I was there because I pooed in my pants. And I tapped my sitter on the shoulder. And it angered him and he told me I was a bad girl. And I knew what I was going to have to do. I knew I was going to have to get in the position that's depicted in State's Exhibit Number 15, and State's Exhibit Number 12. And I knew my head was going to have to be up instead of down like Mr. Elliott told you." You know why we know that? Brandie knew that because she's not looking into the camera in that picture, that's from the side. Mr. Elliott told you she only has her head up in this picture because she's looking at the camera.

And it would read that, "while I was there for however long Mr. Elliott went and got a glass of water in the kitchen, came back, and he was still angry. I still couldn't keep my little head up or feet, as Dennis Rowe told you. And Mr. Elliott, my caretaker, while my mother was at work trying to earn a living, came up and grabbed me by the back of my hair. He pulled a lot of it out. It hurt." Doctors have told you it hurt. There shouldn't be any question in your mind about the pain that little girl went through. "And he grabbed me by the back of my head, but instead of doing what he initially told you when his attorney was asking you the questions yesterday, bam, bam, bam, he really did do what like Mr. Morris told you in the questions. What kind of force? BAM..BAM..BAM..BAM (quickly.)"

We have previously reviewed closing arguments which suggested what a victim may have been thinking as he or she was dying and concluded that they were not grossly improper. *State v. Hunt*, 339 N.C.

STATE v. ELLIOTT

[344 N.C. 242 (1996)]

622, 651-52, 457 S.E.2d 276, 293-94 (1995); *State v. McNeil*, 324 N.C. 33, 49, 375 S.E.2d 909, 919 (1989), *sentence vacated on other grounds*, 494 U.S. 1050, 108 L. Ed. 2d 756 (1990); *State v. King*, 299 N.C. 707, 711-13, 264 S.E.2d 40, 43-44 (1980). The prosecutor's remarks in this case described what Brandie may have been thinking as defendant beat her. This argument was based upon the evidence presented at trial and reasonable inferences which could be drawn therefrom. By making this argument the prosecutor did not ask the jurors to put themselves in the position of the victim. Accordingly, we conclude that the trial court did not err by failing to intervene *ex mero motu*.

**[18]** Next, defendant argues that the trial court erred by permitting the prosecutor to make several arguments in which he indicated that he was a representative of the victim. The prosecutor began his guilt-innocence phase closing argument in the following manner:

> Ladies and gentlemen of the jury, this is my opportunity on behalf of the State of North Carolina and Brandie Freeman to argue to you what I think you should find from the facts that we spent all these days trying to present to you.

In *McNeil* the prosecutor told the jury that "[b]eing a prosecutor is not always a pleasant task, for I speak, Mr. Hobgood speaks for two dead ladies who can not speak." 324 N.C. at 48, 375 S.E.2d at 918. The *McNeil* Court noted that the prosecutor's statement only reminded the jury that he was an advocate for the two victims and concluded that the argument was not so grossly improper that the court abused its discretion in failing to intervene *ex mero motu. Id.* In the present case the prosecutor's remarks similarly reminded the jury that he was an advocate for the State and the victim, and the trial court did not err by failing to intervene *ex mero motu*.

**[19]** Defendant next complains about the emphasized portion of the following argument:

> The defendant is entitled to a fair trial. That is our system. John Robert Elliott is entitled to a fair trial. He has gotten a fair trial. You have seen that he has gotten a fair trial. *This man gets the fair trial (pointing to defendant). That's fine. If any of you were charged with anything you would want a fair trial. I want a fair trial for Brandie Jean Freeman. I think that's at least what she's entitled to for the little time she spent on this earth. I think the bottom of the epitaph should say: "She got her trial. That a jury in Davidson County will not stand for this crap.*

*That John Robert Elliott is guilty· of first degree murder and felony child abuse.* "

(Emphasis added.)

In *State v. Covington*, 290 N.C. 313, 226 S.E.2d 629 (1976), this Court did not find any gross impropriety in the district attorney's statement that "everybody is concerned about the rights of the defendants . . . [.] When in God's name are we going to start getting concerned about the rights of the victims?" *Id.* at 328, 226 S.E.2d at 640. We stated that this utterance seemed "to be only a stirring plea that the defendants and the State be given equal consideration by the jury." *Id.* at 328, 226 S.E.2d at 641. In the present case the prosecutor told the jury that defendant was entitled to a fair trial. His subsequent statement that the victim was also entitled to a fair trial amounted to nothing more than a request that the State be given equal consideration. We conclude that the trial court did not abuse its discretion in declining to intervene *ex mero motu*.

[20] Defendant further assigns error to the following argument:

Make her life worth something. Don't let him get away with this. When he's denied killing her up until yesterday and said it was an accident and that she fell out of the bed, don't let him get away with that.

The prosecutor's argument is well-grounded in the record. Defendant denied killing Brandie prior to trial, stating that Brandie sustained her injuries when she fell off a bed. Defendant's testimony at trial admitting that he killed Brandie followed the presentation of extensive evidence which suggested that Brandie's injuries could not have been caused by a fall from a bed that was only seventeen inches high. We conclude that the trial court did not abuse its discretion by failing to intervene *ex mero motu* to stop the prosecutor's argument. This assignment of error is overruled.

[21] Defendant next assigns error to the trial court's failure to grant his motion to dismiss the charge of felony child abuse. The basis for this assignment of error was that the evidence was insufficient to support a verdict of guilty. Defendant does not make any argument or cite any authority in support of the contention that the evidence was insufficient to support felony child abuse. For this reason this assignment of error is deemed abandoned. N.C. R. App. P. 28(b)(5).

**[22]** Rather than contending that the evidence was insufficient, defendant contends that the trial court erred by entering judgment against the defendant for both first-degree murder and felony child abuse. Defendant argues that sentencing him for both convictions violated his double jeopardy rights because the serious physical injury element of felony child abuse was established by the head injury which resulted in Brandie's death.

> In order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make if the specific grounds were not apparent from the context. It is also necessary for the complaining party to obtain a ruling upon the party's request, objection or motion.

N.C. R. App. P. 10(b)(1). "Except as otherwise provided herein, the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal in accordance with this Rule 10." N.C. R. App. P. 10(a). Defendant did not object to the trial court's imposition of punishment for both the felony child abuse and first-degree murder convictions, defendant did not make any motion or receive a ruling from the trial court with respect to the constitutionality of sentencing defendant for both convictions, and defendant did not assign error to the trial court's failure to dismiss the felony child abuse conviction on the basis that the court could not sentence defendant for both felony child abuse and first-degree murder. Accordingly, defendant has failed to preserve this issue for appellate review.

**[23]** Assuming *arguendo* that this issue had been preserved for appellate review, we would conclude that double jeopardy does not preclude punishing defendant for felony child abuse in this case.

Both the Fifth Amendment to the United States Constitution and Article I, Section 19 of the North Carolina Constitution protect against multiple punishments for the same offense. *State v. Rambert*, 341 N.C. 173, 175, 459 S.E.2d 510, 511-12 (1995); *State v. Gardner*, 315 N.C. 444, 451, 340 S.E.2d 701, 707 (1986). "[W]here a legislature clearly expresses its intent to proscribe and punish exactly the same conduct under two separate statutes, a trial court *in a single trial* may impose cumulative punishments under the statutes." *State v. Murray*, 310 N.C. 541, 547, 313 S.E.2d 523, 528 (1984), *overruled on*

*other grounds by State v. White*, 322 N.C. 506, 369 S.E.2d 813 (1988); *accord Missouri v. Hunter*, 459 U.S. 359, 368-69, 74 L. Ed. 2d 535, 544 (1983); *Gardner*, 315 N.C. at 453, 340 S.E.2d at 708. The language of the felony child abuse provision permits us to conclude that the legislature intended to punish felony child abuse and first-degree murder separately, even when both offenses arise out of the same conduct. *See Gardner*, 315 N.C. at 461, 340 S.E.2d at 712.

Felony child abuse is defined by N.C.G.S. § 14-318.4, and the legislature's intent to punish felony child abuse is set forth in this provision. N.C.G.S. § 14-318.4(b) expressly provides that felony child abuse "is an offense additional to other civil and criminal provisions and is not intended to repeal or preclude any other sanctions or remedies." N.C.G.S. § 14-318.4(b) (1993). The legislature's intent to provide for cumulative punishment may also be inferred from the fact that first-degree murder and felony child abuse each " 'requires proof of a fact which the other does not.' " *See Gardner*, 315 N.C. at 454-55, 340 S.E.2d at 708-09 (quoting *Blockburger v. United States*, 284 U.S. 299, 304, 76 L. Ed. 306, 309 (1932)). Felony child abuse requires the State to prove that the accused is "a parent or any other person providing care to or supervision of a child less than 16 years of age" and that the accused intentionally inflicted a serious physical injury upon the child or intentionally committed an assault resulting in a serious physical injury to the child. N.C.G.S. § 14-318.4(a). First-degree murder "is the unlawful killing of a human being with malice and with premeditation and deliberation." *Fleming*, 296 N.C. at 562, 251 S.E.2d at 432. Felony child abuse is not a lesser included offense of murder. It requires the State to prove facts not required to prove murder; and it addresses a distinct evil, the serious physical abuse of children by parents or other persons providing care to or supervision of children.

The legislature expressly stated that felony child abuse is an offense additional to other criminal provisions and that it is not intended to preclude other sanctions. We conclude that the legislature clearly expressed its intent to punish a defendant cumulatively for felony child abuse and first-degree murder convictions arising out of the same conduct. Therefore, double jeopardy does not preclude punishing defendant for felony child abuse in this case. This assignment of error is overruled.

### CAPITAL SENTENCING PROCEEDING

[24] Defendant contends that the trial court committed reversible error in submitting the especially heinous, atrocious, or cruel aggra-

vating circumstance on the ground that the evidence was insufficient to warrant its submission.

> In determining sufficiency of the evidence to support this circumstance, the trial court must consider the evidence in the light most favorable to the State. *State v. Quick,* 329 N.C. 1, 31, 405 S.E.2d 179, 197 (1991). The State is entitled to every reasonable inference to be drawn from the facts. Contradictions and discrepancies are for the jury to resolve, and all evidence admitted which is favorable to the State is to be considered. *State v. Stanley,* 310 N.C. 332, 339, 312 S.E.2d 393, 397 (1984).

*State v. Gibbs,* 335 N.C. 1, 61, 436 S.E.2d 321, 356-56 (1993), *cert. denied,* ⸺ U.S. ⸺, 129 L. Ed. 2d 881 (1994). This Court has previously identified several types of murder which may warrant the submission of the especially heinous, atrocious, or cruel circumstance.

> One type includes killings physically agonizing or otherwise dehumanizing to the victim. *State v. Lloyd,* 321 N.C. 301, 319, 364 S.E.2d 316, 328[, *sentence vacated on other grounds,* 488 U.S. 807, 102 L. Ed. 2d 18] (1988). A second type includes killings less violent but "conscienceless, pitiless, or unnecessarily torturous to the victim," *State v. Brown,* 315 N.C. 40, 65, 337 S.E.2d 808, 826-27 (1985), including those which leave the victim in her "last moments aware of but helpless to prevent impending death," *State v. Hamlet,* 312 N.C. 162, 175, 321 S.E.2d 837, 846 (1984). A third type exists where "the killing demonstrates an unusual depravity of mind on the part of the defendant beyond that normally present in first-degree murder." *Brown,* 315 N.C. at 65, 337 S.E.2d at 827.

*Gibbs,* 335 N.C. at 61-62, 436 S.E.2d at 356.

The evidence, viewed in the light most favorable to the State, supported the submission of the especially heinous, atrocious, or cruel circumstance. Defendant grabbed Brandie by the hair on the back of her head and slammed her head to the floor six or seven times, causing a massive head injury which led to her death. After repeatedly slamming Brandie's head to the floor, defendant continued to slap and hit the child in what defendant claimed was an effort to revive her. The beating left Brandie with severe bruises on her legs, abdomen, back, buttocks, chest, shoulders, neck, face, and head. Thirty percent of Brandie's hair was forcefully ripped from her scalp. Brandie attempted to put her arm around defendant's neck shortly after the

beating, permitting the inference that she was conscious and in a great deal of pain at that time. This evidence permitted the jury to conclude that the killing would have been "physically agonizing" or "conscienceless, pitiless, or unnecessarily torturous" to the victim.

The victim's age and the existence of a parental relationship between the victim and the defendant may also be considered in determining the existence of the especially heinous, atrocious, or cruel circumstance. *State v. Burr*, 341 N.C. 263, 307, 461 S.E.2d 602, 626 (1995), *cert. denied,* —— U.S. ——, 134 L. Ed. 2d 526 (1996). Brandie was two years old at the time of her death. Defendant lived with Brandie and her mother and had assumed a parental role in caring for Brandie in the months prior to her death. Brandie's mother permitted defendant to discipline Brandie and trusted defendant to take care of Brandie while she was at work. As in *Burr* "defendant's murder of this defenseless child was not only pitiless, but it also betrayed the special role which defendant had been given in the family." *Id.* at 308, 461 S.E.2d at 626. Having reviewed all the circumstances surrounding this murder, we conclude that there was sufficient evidence to support a finding that the murder was especially heinous, atrocious, or cruel. Therefore, we hold that the trial court did not err in submitting this circumstance to the jury. This assignment of error is overruled.

**[25]** Next, defendant contends that the trial court's instruction for the especially heinous, atrocious, or cruel circumstance was unconstitutionally vague, violating defendant's federal and state constitutional rights to be free from cruel or unusual punishment and to due process of law.

After defining heinous, atrocious, and cruel, the trial court instructed the jury that

it was not enough that this murder be heinous, atrocious or cruel as those terms have just been defined to you.

Under the law this murder must have been especially heinous, atrocious, or cruel and not every murder is especially so. For this murder to have been especially heinous, atrocious or cruel, any brutality which was involved in it must have exceeded that which is normally present in any killing or this murder must have been a consciousless [sic] or pitiless crime which was unnecessarily torturous to the victim.

"This Court has consistently held that the especially heinous, atrocious, or cruel aggravating circumstance is constitutional when the narrowing definition is incorporated into the instruction." *State v. Lynch*, 340 N.C. 435, 472, 459 S.E.2d 679, 698 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 558 (1996); *accord Syriani*, 333 N.C. at 391-92, 428 S.E.2d at 141. Defendant has failed to provide us with any compelling reasons to overrule our prior holdings on this issue.

**[26]** Defendant further contends that this instruction is unconstitutional as applied to defendant. Defendant argues that most killings committed by parents against their children are tried noncapitally and that there is no principled distinction between this case and numerous cases in which such conduct has been punished noncapitally. Disparity in sentences imposed upon parents who have killed their children does not render the instruction on the especially heinous, atrocious, or cruel circumstance unconstitutional as applied to defendant. This assignment of error is overruled.

**[27]** Defendant next contends that the trial court erred by permitting the prosecutor to make certain sentencing proceeding closing arguments. Defendant did not object to any of these arguments; therefore, "they are reviewable only to determine whether they were so grossly improper that the trial court erred by failing to intervene *ex mero motu* to correct the errors." *Gregory*, 340 N.C. at 424, 459 S.E.2d at 672.

Defendant contends that the trial court should have intervened in the prosecutor's repeated argument that this killing was the "worst of the worst." Defendant argues that this argument amounted to a personal vouching by the prosecutor that this killing was worse than other first-degree murders. In *State v. McCollum*, 334 N.C. 208, 433 S.E.2d 144 (1993), *cert. denied*, —— U.S. ——, 129 L. Ed. 2d 895 (1994), the prosecutor argued that "this is probably the most cruel, atrocious, and heinous crime you'll ever come in contact with." *Id.* at 227, 433 S.E.2d at 154. The Court stated that the "prosecutor was not stating his personal opinion, but merely arguing that the jury should conclude from the evidence before it that the imposition of the death penalty was proper in this case." *Id.* We conclude that the prosecutor in this case did not state his personal opinion by arguing that Brandie's killing was the "worst of the worst." As in *McCollum* the prosecutor was merely arguing that the jury should conclude from the evidence that it should recommend a sentence of death.

**[28]** Defendant also argues that this argument by the prosecutor improperly diminished the jury's responsibility for recommending a sentence of death in violation of *Caldwell v. Mississippi*, 472 U.S. 320, 86 L. Ed. 2d 231 (1985). In *Caldwell* the Supreme Court held that it was unconstitutional "to rest a death sentence on a determination made by a sentencer who has been led to believe that the responsibility for determining the appropriateness of the defendant's death rests elsewhere." *Id.* at 328-29, 86 L. Ed. 2d at 239. "This Court has limited *Caldwell's* applicability to those cases in which the prosecutor 'suggest[s] to the jurors that they could depend upon judicial or executive review to correct any errors in their verdict.' " *Alston*, 341 N.C. at 250, 461 S.E.2d at 716 (quoting *McCollum*, 334 N.C. at 226, 433 S.E.2d at 153). The prosecutor's remarks in this case did not tend to suggest to the jurors that the responsibility for recommending a sentence of death rested elsewhere or that the jurors could rely on judicial or executive review to correct any errors in the jury's verdict.

**[29]** Defendant further argues that the prosecutor's argument improperly placed defendant at a disadvantage in that defendant's counsel could not argue that "this killing was not all that bad" without offending the jurors. This argument is without merit. "[T]he prosecutor in a capital case has a duty to strenuously pursue the goal of persuading the jury that the facts of the particular case at hand warrant imposition of the death penalty." *Green*, 336 N.C. at 188, 443 S.E.2d at 41. After careful review of the record, we conclude that the prosecutor's argument was reasonable in light of the evidence presented at trial and that the trial court did not abuse its discretion by failing to intervene *ex mero motu*. This assignment of error is overruled.

**[30]** Defendant next contends that the prosecutor misstated the law with respect to the burden of proof with the following sentencing proceeding closing arguments:

> I defy anybody to tell me that the murder of this little girl isn't especially heinous, atrocious or cruel.
>
> . . . .
>
> . . . [Y]ou will also be given an opportunity to consider a lot of mitigating circumstances, those things that they will contend are matters that will make this less than a death penalty [case]. The

**STATE v. ELLIOTT**

[344 N.C. 242 (1996)]

bottom line is, it's a death penalty case. You in your conscious [sic] say it is a death penalty case.

. . . .

. . . Those are the mitigating circumstances. And the rest of it is pretty much, you know what you got to do. You balance those things and you decide the weight and you decide whether this little girl's life was worth his significant work history or his abusing marijuana since age 15 or him not having committed acts of violence, significant acts of violence against someone else.

Defendant contends that these arguments suggested that defendant was required to present sufficient evidence to convince the jury not to recommend death and that the jury should weigh mitigating circumstances against the value of the victim's life. We first note that defendant did not assign error to any of these arguments in the record on appeal. "Except as otherwise provided herein, the scope of review on appeal is confined to a consideration of those assignments of error set out in the record on appeal in accordance with this Rule 10." N.C. R. App. P. 10(a). For this reason defendant's argument with respect to these remarks is beyond the scope of our review.

**[31]** Even if we were to consider defendant's argument pursuant to Rule 2 of the Rules of Appellate Procedure, defendant would not be entitled to relief. "On appeal, particular prosecutorial arguments are not viewed in an isolated vacuum." *State v. Moseley,* 338 N.C. 1, 50, 449 S.E.2d 412, 442 (1994), *cert. denied,* —— U.S. ——, 131 L. Ed. 2d 738 (1995). " 'Fair consideration must be given to the context in which the remarks were made and to the overall factual circumstances to which they referred.' " *Id.* (quoting *State v. Pinch,* 306 N.C. 1, 24, 292 S.E.2d 203, 221, *cert. denied,* 459 U.S. 1056, 74 L. Ed. 2d 622 (1982), *overruled on other grounds by State v. Rouse,* 339 N.C. 59, 451 S.E.2d 543 (1994), *cert. denied,* —— U.S. ——, 133 L. Ed. 2d 60 (1995), *by State v. Robinson,* 336 N.C. 78, 443 S.E.2d 306 (1994), *cert. denied,* —— U.S. ——, 130 L. Ed. 2d 650 (1995), *and by State v. Benson,* 323 N.C. 318, 372 S.E.2d 517 (1988)). Our review of the prosecutor's argument reveals that he explained the balancing process that jurors are required to undertake in considering aggravating and mitigating circumstances. The thrust of the prosecutor's argument was that the mitigating circumstances had little value and that the especially heinous, atrocious, or cruel nature of the killing justified imposing the death penalty. While it was improper to suggest that the jury should balance the mitigating circumstances against Brandie's life,

we conclude that the prosecutor's remarks were not so grossly improper as to require the trial court to intervene *ex mero motu.*

**[32]** Defendant next contends that the prosecutor improperly suggested that the death penalty was divinely required in this case to redeem or give value to the life of the victim. The prosecutor made the following arguments:

> I told you the other day, it is the State's goal to ask you to try to redeem that little child's unjust [death]. The State says we are halfway there. You have convicted Mr. Elliott of first degree murder. You did not let him get away with that. Mr. Elliott needs to be put to death by the State, by your recommendation. That fully redeems that little girl's life on this earth and that finishes the epitaph that we talked about.
>
> . . . .
>
> . . . "Dance death! Your deeds are done. A new time has set in and you are summoned by the Maker. One day death itself will dance before the Lord. The wind and breath of the Lord will call for death, and slowly death will bring all limp life and all brittle forms of death to the judgment seat. God will pronounce death guilty, will sentence death to death and thus sentence to death tears, crying, hunger, lonesomeness and disease. Even now there is enough evidence gathered against death by those who live under the spirit. They build evidence while they work and while they wait for the dance and death of death. The date has been set. God knows the hour." You jurors know the hour. A life for a life because of the facts of this case.

Defendant argues that the prosecutor's remarks constituted "theo-babble" which had the effect of suggesting that the death penalty is divinely required in this case in order to "redeem" or give value to the life of the victim.

> This Court has in the past disapproved of prosecutorial arguments that made improper use of religious sentiment. *See, e.g., State v. Moose,* 310 N.C. 482, 501, 313 S.E.2d 507, 519-20 (1984) (argument that the power of public officials is ordained by God and to resist them is to resist God disapproved); *State v. Oliver,* 309 N.C. 326, 359, 307 S.E.2d 304, 326 (1983) (indicating the impropriety in arguing that the death penalty is divinely inspired).

*State v. Ingle,* 336 N.C. 617, 648, 445 S.E.2d 880, 896 (1994), *cert. denied,* —— U.S.——, 131 L. Ed. 2d 222 (1995).

A careful review of the prosecutor's remarks reveals, however, that neither argument suggested that the law enforcement powers of the State were divinely inspired or ordained by God. Neither argument improperly suggested that the death penalty was divinely required in this case. Accordingly, we conclude that the prosecutor's remarks were not so grossly improper as to require the trial court to intervene *ex mero motu.*

**[33]** Defendant next assigns error to the emphasized portion of the following argument:

> And now it is time for you all to consider the punishment. You are the voice and your voice is the conscious [sic] of this county. *You are the last link in the State's chain of law enforcement, if you will, in this case, because the officers have done all they can do. I have certainly done all I think I can do.*

(Emphasis added.)

To suggest that the jury is effectively an arm of the State in the prosecution of the defendant or that the jury is the last link in the State's chain of law enforcement is improper. *State v. Brown,* 320 N.C. 179, 203-04, 358 S.E.2d 1, 18, *cert. denied,* 484 U.S. 970, 98 L. Ed. 2d 406 (1987). However, the prosecutor's remarks in this case were not so grossly improper as to require the trial court to intervene *ex mero motu.* The essence of the prosecutor's argument was that defendant had committed a serious crime and that the time had come for the jury to make a decision in this case. This Court previously approved arguments suggesting that juries are "the voice and conscience of the community." *Hunt,* 339 N.C. at 651-52, 457 S.E.2d at 293; *accord Brown,* 320 N.C. at 204, 358 S.E.2d at 18. We conclude that the trial court did not abuse its discretion by failing to intervene *ex mero motu* to prevent this argument.

**[34]** Defendant finally contends that the trial court should not have permitted the prosecutor to make the following argument:

> Brandie Freeman can't come into this courtroom and tell me and tell you, when he slammed my head down the first time, it was extremely painful and I didn't die. She can't say, "I was begging for my life." She can't say, "When he slammed my head down the

second time it was again extremely painful and I felt this place on the back of my neck."

Defendant argues that there is no evidence suggesting that Brandie begged for her life and that the prosecutor referred to what Brandie could "not" say.

An "argument '[u]rging the jurors to appreciate the "circumstances of the crime' " is not improper during the penalty phase of a trial." *Gregory*, 340 N.C. at 426, 459 S.E.2d at 673 (quoting *State v. Artis*, 325 N.C. 278, 325, 384 S.E.2d 470, 497 (1989), *sentence vacated on other grounds*, 494 U.S. 1023, 108 L. Ed. 2d 604 (1990)). The nature of the defendant's crime "is one of the touchstones for propriety in a capital sentencing argument." *Id.* The prosecutor's argument related to the nature of defendant's crime and was supported by facts in evidence and reasonable inferences which could be drawn therefrom. The evidence in this case tended to show that defendant slammed Brandie's head to the floor six or seven times, that she remained conscious for a short period of time after this beating, and that she experienced a great deal of pain. While there was no evidence suggesting that Brandie begged for her life during the beating, the prosecutor's argument was not so grossly improper as to require the trial court to intervene *ex mero motu*. This assignment of error is overruled.

[35] Next, defendant assigns error to the jury's failure to find the nonstatutory mitigating circumstance that defendant had a good employment record. "Unlike statutory mitigating circumstances, the jury may determine that a nonstatutory mitigating circumstance has no value even if that circumstance is found to exist." *Alston*, 341 N.C. at 257, 461 S.E.2d at 720. Defendant's evidence of a good employment record was contradicted by evidence which showed that defendant was unemployed at the time of the murder, worked sporadically in the months preceding the murder, and assaulted a supervisor at Lothridge Plumbing Company in March of 1992. The jury either rejected the evidence suggesting defendant had a good employment record or determined that this circumstance had no mitigating value. Accordingly, this assignment of error is overruled.

PRESERVATION ISSUES

Defendant raises three issues which he concedes have been decided against his position by this Court: (i) the trial court erred by permitting the State to peremptorily excuse jurors who showed a reluctance to vote for the death penalty, (ii) the trial court erred by

denying his motion to prevent the State from "death-qualifying" the jury, and (iii) the trial court erred in denying his motion to strike the death penalty on the ground that the North Carolina death penalty statute is unconstitutional. We have considered defendant's arguments on these issues and find no compelling reason to depart from our prior holdings. Therefore, we overrule these assignments of error.

## PROPORTIONALITY

[36] Having found no error in the guilt-innocence phase or the capital sentencing proceeding, we must undertake our statutory duty to determine whether (i) the evidence supports the aggravating circumstance found by the jury; (ii) passion, prejudice, or any other arbitrary factor influenced the imposition of the death sentence; and (iii) the death sentence is "excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." N.C.G.S. § 15A-2000(d)(2) (Supp. 1995).

Defendant was found guilty of first-degree murder based on premeditation and deliberation. Following a capital sentencing proceeding, the jury found the aggravating circumstance that the capital felony was especially heinous, atrocious, or cruel, N.C.G.S. § 15A-2000(e)(9). The jury found the statutory mitigating circumstance that defendant had no significant history of prior criminal activity, N.C.G.S. § 15A-2000(f)(1). The trial court submitted three statutory mitigating circumstances which were rejected by the jury: (i) the murder was committed while defendant was mentally or emotionally disturbed, N.C.G.S. § 15A-2000(f)(2); (ii) defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law was impaired, N.C.G.S. § 15A-2000(f)(6); and (iii) the catchall circumstance, N.C.G.S. § 15A-2000(f)(9). The jury found ten of the eleven nonstatutory mitigating circumstances submitted for its consideration.

We have reviewed the sufficiency of the evidence supporting the especially heinous, atrocious, or cruel aggravating circumstance and conclude that the evidence supports this circumstance. We further conclude from our review of the record that the sentence of death was not imposed under the influence of passion, prejudice, or any other arbitrary factor. We must now determine whether the sentence of death in this case is excessive or disproportionate.

One purpose of proportionality review is "to eliminate the possibility that a person will be sentenced to die by the action of an aber-

rant jury." *State v. Holden*, 321 N.C. 125, 164-65, 362 S.E.2d 513, 537 (1987), *cert. denied*, 486 U.S. 1061, 100 L. Ed. 2d 935 (1988). Another purpose is to guard "against the capricious or random imposition of the death penalty." *State v. Barfield*, 298 N.C. 306, 354, 259 S.E.2d 510, 544 (1979), *cert. denied*, 448 U.S. 907, 65 L. Ed. 2d 1137 (1980). We compare this case to others in the pool, which we defined in *State v. Williams*, 308 N.C. 47, 79-80, 301 S.E.2d 335, 355, *cert. denied*, 464 U.S. 865, 78 L. Ed. 2d 177 (1983), and *Bacon*, 337 N.C. at 106-07, 446 S.E.2d at 563-64, that "are roughly similar with regard to the crime and the defendant." *State v. Lawson*, 310 N.C. 632, 648, 314 S.E.2d 493, 503 (1984), *cert. denied*, 471 U.S. 1120, 86 L. Ed. 2d 267 (1985).

This Court has determined that the sentence of death was disproportionate in seven cases. *Benson*, 323 N.C. 318, 372 S.E.2d 517; *State v. Stokes*, 319 N.C. 1, 352 S.E.2d 653 (1987); *State v. Rogers*, 316 N.C. 203, 341 S.E.2d 713 (1986), *overruled on other grounds by Vandiver*, 321 N.C. 570, 364 S.E.2d 373; *State v. Young*, 312 N.C. 669, 325 S.E.2d 181 (1985); *State v. Hill*, 311 N.C. 465, 319 S.E.2d 163 (1984); *State v. Bondurant*, 309 N.C. 674, 309 S.E.2d 170 (1983); *State v. Jackson*, 309 N.C. 26, 305 S.E.2d 703 (1983). We find the instant case distinguishable from each of these seven cases.

None of the cases found disproportionate by this Court involved the murder of a child. *State v. Kandies*, 342 N.C. 419, 455, 467 S.E.2d 67, 87, *cert. denied*, —— U.S. ——, 136 L. Ed. 2d 167 (1996); *State v. Walls*, 342 N.C. 1, 71, 463 S.E.2d 738, 776-77 (1995), *cert. denied*, —— U.S. ——, 134 L. Ed. 2d 794 (1996). Further, "only two involved the 'especially heinous, atrocious, or cruel' aggravating circumstance." *Syriani*, 333 N.C. at 401, 428 S.E.2d at 146-47 (citing *Stokes*, 319 N.C. 1, 352 S.E.2d 653; *Bondurant*, 309 N.C. 674, 309 S.E.2d 170). *Stokes* and *Bondurant* are easily distinguishable from this case.

The defendant in *Stokes* was one of four individuals involved in the brutal beating death of a robbery victim. *Stokes*, 319 N.C. at 3, 352 S.E.2d at 654. In finding the sentence of death disproportionate, the *Stokes* Court emphasized that the defendant was found guilty of first-degree murder based upon the felony murder rule; that there was little, if any, evidence of premeditation and deliberation; and that the defendant was seventeen years old at the time of the murder. *Id.* at 21, 24, 352 S.E.2d at 664, 666. In the instant case the jury found the thirty-one-year-old defendant guilty of first-degree murder on the basis of premeditation and deliberation. "The finding of premedita-

tion and deliberation indicates a more cold-blooded and calculated crime." *Artis*, 325 N.C. at 341, 384 S.E.2d at 499-500.

In *Bondurant* the defendant, the victim, and several friends were riding in a car when the defendant began taunting the victim by threatening to shoot him. The defendant eventually shot the victim and then immediately drove the victim to the hospital. The killing consisted of one gunshot wound to the head, and there was substantial evidence that the defendant was highly intoxicated at the time of the shooting. *Bondurant*, 309 N.C. at 677, 693-94, 309 S.E.2d at 173, 182. In the present case defendant brutally beat a two-year-old girl entrusted to his care. Despite the fact that he recognized the severity of Brandie's injuries, defendant did not immediately seek medical attention for her. While the State introduced evidence suggesting that defendant was "coming off crack" cocaine at the time of the killing, defendant testified and denied using crack cocaine or marijuana on the day of the killing.

We conclude that this case is not sufficiently similar to any of the seven cases found disproportionate by this Court to warrant a finding of disproportionality.

Defendant refers us to several additional cases in which juries recommended life sentences following a capital sentencing proceeding. We recognize that juries have returned sentences of life imprisonment in cases involving the murder of a child by a parent or an adult caretaker. However, "the fact that in one or more cases factually similar to the one under review a jury or juries have recommended life imprisonment is not determinative, standing alone, on the issue of whether the death penalty is disproportionate in the case under review." *Green*, 336 N.C. at 198, 443 S.E.2d at 46.

We conclude that this case is most analogous to cases in which this Court has held the death penalty not to be disproportionate. The case in the pool most similar to this one is *State v. Burr*, 341 N.C. 263, 461 S.E.2d 602. In *Burr* the defendant was the thirty-three-year-old boyfriend of the mother of the four-month-old victim. The evidence in *Burr* tended to show that the defendant had taken on a parental role in caring for the victim and that the defendant brutally beat the victim to death. The defendant in *Burr* was convicted of first-degree murder on the basis of premeditation and deliberation. The only aggravating circumstance found by the jury was the especially heinous, atrocious, or cruel circumstance. We upheld the death penalty in *Burr*. This case is strikingly similar. Defendant assumed a

parental role in caring for Brandie, defendant brutally beat Brandie while he was caring for her, and Brandie died from a massive head injury caused by that beating. As in *Burr* defendant was convicted of first-degree murder on the basis of premeditation and deliberation; and the jury found only the especially heinous, atrocious, or cruel aggravating circumstance.

After comparing this case to similar cases in the pool used for proportionality review, we conclude that defendant's death sentence is not excessive or disproportionate.

We hold that defendant received a fair trial and capital sentencing proceeding free from prejudicial error. Comparing defendant's case to similar cases in which the death penalty was imposed and considering both the crime and defendant, we cannot hold as a matter of law that the death penalty was disproportionate or excessive.

NO ERROR.